## BOBBY LEE WOODS, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 9954

July 12, 1978

581 P.2d 444

*Alan R. Johns,* Las Vegas, for Appellant.

*Robert List,* Attorney General, Carson City, and *George Holt,* District Attorney, Clark County, for Respondent.

**OPINION**

By the Court, GUNDERSON, J.:

Bobby Lee Woods appeals his conviction on two counts of robbery, and use of a deadly weapon in the commission of a crime, contending the district court erred by (1) denying his right to a speedy trial, (2) enhancing penalties on each robbery count, and (3) admitting evidence of flight. Woods also challenges (4) the sufficiency of evidence to sustain the verdict, and (5) alleged prosecutorial misconduct during closing argument. Finding no reversible error, we affirm.

1.   While Woods claims his right to speedy trial was denied by an eleven-month delay between arraignment and trial, the record reveals he requested twenty continuances in order to petition this court for habeas relief, and to prepare for trial. Where "an accused 'is responsible for the delay of trial beyond the 60-day limit, he may not complain.' Oberle v. Fogliani, 82 Nev. 428, 430, 420 P.2d 251, 252 (1966)." Randolph v. Sheriff, 93 Nev. 532, 534, 569 P.2d 408, 410 (1977). Moreover, we have recently upheld the statutory scheme which required appellant to waive his right to speedy trial in order to seek habeas relief. See NRS 34.380(1)(c)(1) repealed, 1977 Nev. Stats. 768, 1350,

1352; NRS 34.375(1), Grego v. Sheriff, 94 Nev. 48, 574 P.2d 275; *Randolph,* cited above.

2. The thrust of Woods' contention concerning enhanced penalties on each robbery count, for use of a deadly weapon, is that more than one such sentence is prohibited when enhancement results from the commission of a single act.[1] Woods relies on precedent from California wherein, it has been held: "if all the charged offenses are incident to one objective and effectively comprise an indivisible transaction, then [additional penalties for use of a deadly weapon] may be invoked only once and not in acccordance with the number of victims." In Re Culbreth, 551 P.2d 23, 25 (Cal.1976); *see also* People v. Johnson, 112 Cal.Rptr. 834 (Cal.App. 1974) (under California's firearm enhancement statute, there may be only one enhancement for use of a firearm even though defendant committed three crimes during a liquor store holdup.)

We note, however, that our statutory scheme differs significantly from the California plan, and we are therefore compelled to reject such reasoning. The California Legislature has specifically prohibited multiple sentences based upon a single transaction. *See* Cal. Pen. Code § 654 (West 1970). Our legislature thus far has not adopted such a prohibition.[2] *Cf.* State v. Kendall, 561 P.2d 935 (N.M.App.1977).

Moreover, under the California statutory scheme, the enhanced penalty increases with successive convictions. *See Ibid* at 943; Cal. Pen. Code § 12022.5 (West 1970). NRS 193.165(1) is worded differently; enhancement is required whenever a "firearm or other deadly weapon" is used in the "commission of a crime." The length of such sentence shall be "equal to" the term for the underlying crime. *Ibid.*

"If [a] statute punish[es] for 'use' of a firearm in committing a [crime], the punishment is to be applied for each [crime] committed by using a firearm." *Kendall,* cited above, at 943. The only limitation imposed is to discern whether or not there is truly only one offense. "The test to be applied . . . is whether each [underlying] count requires proof of an additional fact

---

[1]NRS 193.165(1) provides:

Any person who uses a firearm or other deadly weapon in the commission of a crime shall be punished by imprisonment in the state prison for a term equal to and in addition to the term of imprisonment prescribed by statute for such crime. The sentence prescribed by this section shall run consecutively with the sentence prescribed by statute.

[2]Nor does our legislation permit enhancement where the use of a deadly weapon is an element of the crime. NRS 193.165(3). Cal.Pen. Code § 12022.5 mandates enhancement "even in those cases where the use of a weapon is an element of the offense."

which the other does not." Woofter v. O'Donnell, 91 Nev. 756, 760, 542 P.2d 1396, 1399 (1975). "A defendant may not bootstrap himself into avoidance of additional penalties by claiming that the series of divisible acts, each of which had been committed with a separate identifiable intent and objective, composed an indivisible transaction." Morrell v. State, 93 Nev. 449, 451, 567 P.2d 60, 61 (1977), citing *In Re Culbreth,* cited above, at 25.[3]

Here, using the *Woofter* test it is apparent that district court made no error in enhancing Woods' sentence for each robbery count. The record reveals two young men entered the Sloan Service and Bar, and ordered drinks. The bartender identified Woods as one of them. The two subsequently displayed guns, and bound the bartender and another employee, Hubert Hardesty, in the men's room. They then took Hardesty's wallet. Afterwards, the assailants returned to the bar area and took approximately $1,500 from the bar's cash boxes. It is clear under these facts that two robberies occurred—two separate property interests were invaded; two separate victims robbed. The court therefore properly sentenced Woods.

3. Woods next contends the court erroneously admitted evidence relating to an attempted escape after his apprehension. This issue will not be considered because appellant has failed to cite relevant authority to support the contention. *See, e.g.,* Franklin v. State, 89 Nev. 382, 513 P.2d 1252 (1973). Moreover, Woods failed to request any limiting or clarifying instruction concerning this evidence, and did not properly preserve the issue for appellate review. *See, e.g.,* Walker v. State, 89 Nev. 568, 516 P.2d 739 (1973).

4. Woods next claims NRS 193.165 (cited above at fn. 1) required the State to prove that the firearms used during the robbery were deadly weapons. This issue has been previously dealt with in Stalley v. State, 91 Nev. 671, 676, 541 P.2d 658, 661-662 (1975), wherein we held:

> By the words "firearm or other deadly weapon," the legislature has declared that a firearm is a deadly weapon within the contemplation of the statute. Proof of its deadly capabilities is not required. To require such proof would frustrate the legislative purpose to deter crime by providing a greater penalty when a firearm is used in the commission of a public offense.

---

[3]We are in agreement with the California Supreme Court only as to this statement. The *Culbreth* opinion actually reached an opposite result.

5. Finally, Woods insists the prosecutor committed grievous misconduct during closing argument by displaying a sawed-off shotgun, and commenting thereon. During trial the victims differed in their descriptions of the guns used in the robbery. Mr. Hardesty felt that the State's exhibit (a sawed-off shotgun) was not one of the weapons used; Mr. Virginis could not be sure.[4] During closing argument the prosecutor displayed the weapon and stated:

> Now, this is *not the gun probably* that was used in the robbery because Mr. Hardesty said that he's certain that it was a double-barrelled shotgun. It probably looked like a cannon when it was stuck in his face. Mr. Virginis says this looks like the gun, and you are to decide what weight to give it, but the reason he says it looks like the gun is because it's sawed-off just like the shotgun. *Again that gives us an insight into the defendant's personality.* What do we use this for? Do we put this on our mantle? Do we go hunting with this? What's it used for? *Well, I submit, ladies and gentlemen, that this weapon is used for exactly what he used it for on February 23rd, or a similar weapon, and that is to commit robberies.* (Emphasis added.)

Woods contends the above remarks mandate a new trial, because the prosecutor apparently believed the gun displayed was not the same one used in the robbery. This issue need not be considered. "[T]o entitle a defendant to have improper remarks of counsel considered on appeal, objections must be made to them at the time, and the court must be required to rule upon the objection, to admonish counsel, and instruct the jury." Moser v. State, 91 Nev. 809, 814, 544 P.2d 424, 427 (1975); State v. Hunter, 48 Nev. 358, 232 P.778 (1925). Here, Woods objected to the comment, but did not request an admonition, or jury instruction. Moreover, even if we assume that the comment was misconduct by the prosecutor, "since the record eliminates any doubt of the guilt of the accused, it seems clear that the offensive remark did not contribute to the jury verdict."[5] Pacheco v. State, 82 Nev. 172, 180, 414 P.2d 100, 103 (1966); *see also* Harris v. State, 90 Nev. 172, 521 P.2d 367 (1974).

Affirmed.

BATJER, C. J., and MOWBRAY, THOMPSON, and MANOUKIAN, JJ., concur.

[4]The shotgun was seized when the police apprehended Woods.

[5]We note in this regard that Woods' fingerprints were also found on the cash boxes by the police.