In the MATTER OF the LIQUIDATION OF WISCONSIN SURETY CORPORATION, a Wisconsin insurance corporation, A. Roy Anderson, Special Deputy Commissioner of Insurance of the State of Wisconsin, as Liquidator:

BELL CAPTAIN NORTH CENTRAL, INC., Claimant-Appellant,

v.

A. Roy ANDERSON, Special Deputy Commissioner of Insurance of State of Wisconsin, as Liquidator: Respondent.

Court of Appeals

*No. 81–1533. Argued February 24, 1982.—Decided March 28, 1983.*
(Also reported in 332 N.W.2d 860.)

For the claimant-appellant there were briefs by *Eric A. Farnsworth* and *Lisa F. Kane* and *DeWitt, Sundby, Huggett & Schumacher, S.C.*, of Madison, and oral argument by *Eric A. Farnsworth*.

For the respondent there were briefs by *La Follette, Sinykin, Anderson & Munson* of Madison, and oral argument by *Christopher J. Wilcox of Madison*.

Before Gartzke, P.J., Dykman, J. and W.L. Jackman, Reserve Judge.

GARTZKE, P.J. [1]   Bell Captain North Central, Inc. appeals from the circuit court's order affirming the recommendation of the liquidator of Wisconsin Surety Corporation to disallow appellant's claim. We reverse.

The facts are undisputed. In 1971 Bell Captain purchased 180 automated valet service units from Captain International Industries. Disputes arose between Captain International and Bell Captain over Bell Captain's account. In May 1972 Captain International commenced a replevin action in Minnesota to retake the units. The Minnesota statute, then sec. 565.03, required as a prerequisite to the issuance of a writ of replevin:

A bond to defendant [here Bell Captain] shall be executed by or in behalf of the plaintiff [here Captain International], with surety approved by the sheriff, in a penal sum at least double the value of the property, conditioned for the return of such property to the defendant, if a return thereof be adjudged, and for the payment to him of such sum as for any cause may be adjudged in his favor.

Captain International accordingly posted a bond for $280,000 with itself as principal, Wisconsin Surety Corporation as the surety, and Bell Captain as the obligee. The court issued a writ of replevin, and the service units

---

[1] As directed by the Chief Justice of the Wisconsin Supreme Court, the writing of this opinion has been reassigned from Bablitch, J. to another judge.

were seized and delivered to Captain International. In June 1977 trial was held in the Minnesota replevin action. The Minnesota court found Bell Captain had title and the right to possession of the units, and entered judgment in Bell Captain's favor on October 4, 1977. By that time the units had become valueless and Captain International was bankrupt.

In April 1975 Wisconsin Surety Corporation was liquidated under ch. 645, Stats. Coverage under its policies was terminated fifteen days after the order of liquidation, pursuant to sec. 645.43(1). Bell Captain filed a claim with the liquidator on October 4, 1977, the same day on which the Minnesota judgment was issued and entered, and the liquidator's recommendation followed.

Both parties agree, and the trial court found, that Bell Captain's claim is a contingent claim, but that is merely the beginning of the matter. Contingent claims are governed by sec. 645.63, Stats., which consists of six numbered subsections, each designed to govern a different class of contingent claim. The class into which the contingent claim falls affects the recoverability of the claim and the amount recoverable by the claimant. Only the classifications in the first three subsections concern us.

Section 645.63, Stats., provides in relevant part:

(1) The claim of a 3rd party which is contingent only on the party's first obtaining a judgment against the insured shall be considered and allowed as if there were no such contingency.

(2) Any claim that would have become absolute if there had been no termination of coverage under s. 645.-43, and which was not covered by insurance acquired to replace the terminated coverage, shall be allowed as if the coverage had remained in effect, unless at least 10 days before the insured event occurred either the claimant had actual notice of the termination or notice was

mailed to the claimant as prescribed by s. 645.47 (1) or 645.48 (1). If allowed the claim shall share in distributions under s. 645.68 (8).

(3) A claim may be allowed even if contingent, if it is filed in accordance with s. 645.61 (2). It may be allowed and may participate in all dividends declared after it is filed, to the extent that it does not prejudice the orderly administration of the liquidation.

. . . .

Chapter 645, Stats., reads more easily when applied to fire, life or accident insurance claims than to claims on surety bonds. Chapter 645 is, however, applicable to liquidation of a surety bond company, and we must fit Bell Captain's claim into sec. 645.63.

The liquidator asserts, and the trial court held, that sec. 645.63 (2), Stats., governs Bell Captain's claim. The liquidator asserts that the trial court should be affirmed and the claim disallowed because it is "truly contingent" in that the "insured event" under the bond is the adjudication ordering the return of the replevied property, the adjudication occurred in 1977, and Wisconsin Surety's coverage ceased in 1975. Bell Captain asserts that the insured event in a replevin bond is the wrongful taking itself and not an adjudication to that effect. It argues that, therefore, subsec. (2) does not apply and that either subsec. (1) or (3) is applicable. To determine which of the three sections governs Bell Captain's claim, we look both to the language of the statute and to the language of the bond.

The Legislative Council's Insurance Laws Revision Committee, whose comments appear in *Wis. Stats. Ann.* following each numbered subsection in ch. 645, Stats., attempted in Sec. 645.63 to deal with the "traditionally difficult and mishandled problem of contingent claims." It did so by distinguishing, in sec. 645.63 (1) and (2), between "truly" and "technically" contingent claims. We find the distinction helpful, as do the parties.

The Committee Comment—1967 following sec. 645.43, Stats., explains that "the claim of a third party who has not reduced his claim against the policyholder to judgment is only technically and superficially contingent, if contingent at all, and should be treated as if it were an ordinary claim. This technical contingency conceals the underlying reality of present insurer liability." Section 645.63(1) describes the "technically contingent" claim referred to in the comment.

Both Bell Captain and the liquidator urge that sec. 645.63(2), Stats., applies only to "truly contingent" claims. The Committee Comment—1967 describes such a claim as one "where the event on which liability would arise has not yet occurred. An illustration is a possible future claim on a fire policy where there has not yet been a fire." We agree that sec. 645.63(2) describes a "truly contingent" claim.

Bell Captain and the liquidator argue that sec. 645.63 (3), Stats., cannot be limited only to truly contingent claims, but must be construed to allow, for instance, a technically contingent claim of a policyholder, or of someone not a third party, which would otherwise be excluded by the language of sec. 645.63(1) and (2). We concur in this interpretation.

Accordingly, under the statutory scheme, sec. 645.63 (1), Stats., governs the technically contingent claims of third parties, sec. 645.63(2) governs truly contingent claims, and sec. 645.63(3) governs other contingent claims, including technically contingent claims of those not third parties.

To determine which of the three types of claims is involved, we turn to the bond itself. The bond provides in relevant part:

Captain International Industries, Inc., as principal, and Wisconsin Surety Corporation, as sureties are held and firmly bound unto . . . Bell Captain North Central . . . for which payment . . . we jointly and severally bind ourselves . . . firmly by these presents.

. . . .

Now, Therefore, If said Plaintiff [Captain International] shall return said property to said Defendants, if a return shall be adjudged, and shall pay to said Defendants such sum as for any cause may be adjudged in his favor, then this obligation shall be void; otherwise to remain in full force.

A surety bond is a contract. The interpretation of the language of an unambiguous contract is a question of law which we may review ab initio. *Jones v. Jenkins,* 88 Wis. 2d 712, 722, 277 N.W.2d 815, 819 (1979). The bond unambiguously establishes that the surety is liable to Bell Captain, unless Captain International returns the property, if return is adjudged, and pays damages.

The liquidator argues that the surety's liability is premised solely on an adjudication adverse to Captain International. Bell Captain urges us to distinguish the event which fixes liability (a judgment adverse to one party) from the underlying liability. Bell Captain concedes that an adjudication is a necessary prerequisite to the surety's liability for payment, but asserts that this differs from the underlying liability of the surety on the bond, which, it asserts, has existed from the time Captain International seized the goods, after the bond had been posted. Bell Captain's analysis would make it claim a technically contingent claim.

Consequently, the question is whether Wisconsin Surety was liable to Bell Captain in 1975 when the liquidation occurred. If it was, Bell Captain's claim is technically contingent and must be allowed under either sec. 645.63(1) or (3), Stats. If the surety became liable to Bell Captain because of the 1977 adjudication in the Min-

nesota replevin action, its claim is truly contingent and must be disallowed under sec. 645.63 (2) .[2]

We conclude that Wisconsin Surety had a liability co-extensive with that of the principal on the replevin bond from the time the bond was executed. The bond language accords with the generally accepted definition of a surety's obligation. "The surety's promise is in form a *direct* and *primary* promise to pay the debt of another. It is usually, though not necessarily, made jointly or *jointly and severally* with the principal . . . and gives rise to a primary duty." *Simpson on Suretyship* at 16 (1950) (emphasis added). The *Restatement of Security* sec. 82 at 229 (1941), defines a surety as "the person who is bound on an obligation from which another, by the discharge of a duty [the principal], should relieve him."

The second quoted paragraph of the bond creates a condition subsequent by which the surety may avoid liability on the debt. This interpretation is supported by the purpose of the replevin bond: to insure that the defendant in a replevin action—here, Bell Captain—is reimbursed if the seizure, as here, is wrongful. "The surety's obligation is a necessary security for the defendant to avoid injustice as a result of the somewhat unusual course of the law in giving the plaintiff at least a temporary relief merely as a result of his bringing the action." *Restatement of Security* sec. 197 (2) comment *b* at 539.

---

[2] That disallowance results because sec. 645.63(2), Stats., provides that such a claim should be allowed "unless at least 10 days before the insured event occurred either the claimant had actual notice of the termination or notice was mailed to the claimant." The trial court interpreted "insured event" in subsec. (2) to mean the 1977 adjudication and found that Bell Captain had "ample notice" of the liquidation. We agree with the interpretation and accept the factual finding. The record shows that attorneys for Bell Captain had actual notice of Wisconsin Surety's liquidation in 1976.

■

Accordingly, when the replevin bond was executed, Wisconsin Surety became liable to Bell Captain, the obligee on the bond. That being true, Bell Captain's claim at the time of Wisconsin Surety's liquidation was, using the Committee Comment language, a "technically contingent" claim, because a "present insurer liability" existed. A technically contingent claim must be allowed under either sec. 645.63 (1) or (3), Stats.

To fall under sec. 645.63 (1), Stats., Bell Captain's claim must be the claim of a "third party," a term not defined in ch. 645. *Black's Law Dictionary* (5th ed. 1979) defines a third party as "[o]ne not a party to an agreement or to a transaction but who may have rights therein." As the liquidator points out, a replevin bond is commonly viewed as a "three-party" contract.

Every suretyship involves three parties: (a) the one for whose account the contract is made, whose debt or default is the subject of the transaction, and who is called the principal; (b) the one to whom the debt or obligation runs, the obligee in suretyship, called the creditor; and (c) the one who agrees that the debt or obligation running from the principal to the creditor shall be performed, and who undertakes on his own part to perform it if the principal does not, called the surety.

Stearns, *The Law of Suretyship* sec. 1.4 at 3 (5th ed. 1951) (footnote omitted). Bell Captain is the named obligee in the bond. The debt runs to Bell Captain. The bond is for the benefit of Bell Captain. Bell Captain is a party to the bond and is not a third party for the purposes of sec. 645.63 (1).

■

Bell Captain's claim therefore falls within sec. 645.63 (3), Stats., the catch-all for contingent claims which do not fit subsecs. (1) or (2), and which allows a claim if

it is an "excused late filing" under sec. 645.61(2).[3] That section will excuse a late filing for "good cause" which includes: "(e) That a claim was contingent and became absolute, and was filed within 30 days after it became absolute." Bell Captain's claim was contingent only on judgment in the replevin action. The claim was filed within thirty days of the date of that adjudication. The filing is therefore an excused late filing and allowable under sec. 645.63(3).

*By the Court.*—Order reversed.

---

[3] Section 645.61(2), Stats., states in relevant part:

For a good cause shown, the liquidator shall recommend and the court shall permit a claimant making a late filing to share in dividends, whether past or future, as if the claim were not late, to the extent that any such payment will not prejudice the orderly administration of the liquidation. Good cause includes but is not limited to the following:

. . . .

(e) That a claim was contingent and became absolute, and was filed within 30 days after it became absolute.