DELORES HOUK, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 18024

DELORES HOUK, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 18025

December 31, 1987 747 P.2d 1376

*Lambrose, FitzSimmons & Perkins,* Carson City, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Noel S. Waters,* District Attorney and *Lawrence J. Stratman,* Deputy District Attorney, Carson City, for Respondent.

## OPINION

By the Court MOWBRAY, J.:

These are consolidated appeals from judgments of conviction, pursuant to guilty pleas, of three counts of issuance of a no account check, and two counts of uttering a forged instrument. NRS 205.130; 205.110. Appellant received three ten-year sentences on the issuance charges, and two ten-year sentences on the uttering charges; all sentences are consecutive. Appellant's sole contention on appeal is that her sentence of fifty years violates the constitutional proscription against cruel and unusual punishment because it is grossly disproportionate to the seriousness of her crimes. She therefore requests this court to reverse her sentence under the rationale of Solem v. Helm, 463 U.S. 277 (1983).

Appellant Delores Houk, age 51 at sentencing, is a chronic gambler with a history of fraudulent or insufficient funds check offenses dating back to 1959. Since that date, Houk has been arrested eleven times, resulting in two felony and four misdemeanor convictions. The instant charges in Docket No. 18024 arise from Houk's activities between May 17, 1985 and June 18, 1985. During this one month period, Houk passed seventeen checks drawn on a closed account, obtaining a total of $12,640 from the Ormsby House, the Carson Nugget, and Lucky's Market. In early July 1985, the Carson City District Attorney's office received a request for an arrest warrant for Houk on these seventeen checks. Houk contacted the district attorney and asked for an opportunity to make restitution, which request was granted. Shortly thereafter, on July 20, 1985, Houk attempted to negotiate another check drawn on insufficient funds at Lucky's

Market. Lucky's employees recognized Houk and immediately had her arrested for this offense. She was released on $2,500 bail later that same day. (Docket No. 18025 concerns this charge as well as two of the forgery charges described below.)

On July 24, 1985, the district attorney filed a complaint against Houk charging her with seventeen counts of issuance of a no account check. A complaint charging her with attempted issuance of an insufficient funds check was also filed against her the next day. On July 31, 1985, Houk was arrested on the issuance charges, and was subsequently released on a $5,000 bond. Houk again asked for and received time to make restitution, thus forestalling the criminal proceedings against her.

While on bail for these offenses, Houk committed numerous uttering and issuance offenses in Washoe, Clark, Mineral and Lyon Counties, as well as in Carson City. In October 1985, while working as a waitress in Yerington, Houk stole a co-worker's purse, including the woman's check cashing card and driver's license. She then had 200 checks printed using her co-worker's account number, and forged and uttered an additional forty checks amounting to approximately $3,900. At least one of those checks was passed in Carson City, and is the subject of one forgery count in Docket No. 18025. On January 3, 1986, the Yerington Police Department arrested Houk on five felony charges stemming from this incident, at which time Houk confessed to these crimes. Houk was later released on $15,000 bail.

In June 1986, Houk obtained a credit card in the name of Marie Taylor by using false information. In August 1986, Houk, using an assumed name and a false social security number, obtained false identification from the department of motor vehicles. With this false identification, she first opened a checking account in the name of J & J Upholstery, a nonexistent business, and successfully passed a check on this account in Carson City. She also ordered 300 checks on the account of J & S Upholstery, a Carson City business, and forged at least two checks on this account. Also in August of 1986, Houk obtained a check from Robinson Street Properties, another Carson City business. Again she obtained false identification from the motor vehicle department, had 500 additional checks printed up, and began passing forged checks in Carson City and Reno. Between September 2nd and 8th, 1986, in Carson City alone, Houk wrote four checks on this account totaling approximately $5,335.

The timing of Houk's other offenses while out on bail is not clear from the record. At some time, however, Houk travelled to Hawthorne and passed about $200 worth of bad checks. Houk was arrested again. After being released on her own recognizance, Houk failed to appear for arraignment on these charges.

Houk also wrote numerous checks in Las Vegas and Reno totalling approximately $5,000.

On October 1, 1986, the Carson City District Attorney filed two complaints against Houk, charging her with forgery of her co-worker's check and forgery of a check drawn on J & S Upholstery's account. The Carson City Sheriff arrested Houk for these charges on October 3, 1986; bail was set at $25,000. Houk has been incarcerated since her arrest.

Houk caused her victims to lose approximately $35,000 during her check writing sprees. Facing a total of twenty felony counts in Carson City, Houk agreed to plead guilty to three counts of issuance of a no account check and two counts of uttering a forged instrument in exchange for the dismissal of the other fifteen felony counts. Additionally, Carson City agreed that it would not prosecute Houk on an additional seven felony counts arising from the offenses described above. Houk's counsel below also successfully obtained assurances from Washoe, Lyon, Clark and perhaps Mineral Counties that the charges pending against her in those counties would not be pursued.

At sentencing, the district judge considered the presentence report, as well as the representations of counsel, Houk's written and oral statements, and many letters from Houk's former husband, his children, and friends of her former husband's family. These letters stressed that Houk was not only a compulsive gambler, but an extraordinary con artist and liar. The district judge accepted the plea bargain and sentenced Houk to five consecutive ten-year sentences in the Nevada State Prison, primarily because she wrote numerous bad checks while out on bail, and because he believed that she could not be trusted to be admitted to probation due to "a complete and total personal dishonesty that cannot be changed."

Appellant contends on appeal that her sentence of fifty years violated the constitutional proscription against cruel and unusual punishment because it is grossly disproportionate to the seriousness of her crimes, and therefore requests this court to reverse her sentence under the rationale of Solem v. Helm, 463 U.S. 277 (1983). For the reasons set forth below, we decline to overturn her sentence.

Appellant first argues that in comparison to the gravity of the offenses she committed, the penalty she received is harsh. She does not support this argument with any authority, but generally argues that a fifty-year sentence is extraordinary for any criminal, and that her sentence amounts to in excess of one year in prison for each $1,000 stolen. She also makes the bare allegation that white collar criminals who embezzle for greater sums from hundreds of victims commonly receive either nominal prison terms or probation.

Appellant's argument is unconvincing. The maximum penalty for each felony count to which she pleaded guilty is ten years and a $10,000 fine. *See* NRS 205.090, 205.130. The district court sentenced her to ten years on each count, and ran the sentences consecutively. Appellant was not simply writing insufficient funds checks on her own account. She ordered checks under assumed names, and passed numerous forged instruments using false identification and disguises. This occurred two different times with two different businesses and false identification cards. She committed similar offenses using a co-worker's stolen driver's license and check cashing card. Appellant's sentence does not appear harsh when considered in light of the numerous crimes she committed while out on bail, the number of charges that were either dismissed or not pursued, and appellant's prior record.

Appellant next argues that when her sentence is compared to sentences received for other crimes in this jurisdiction, her sentence is disproportionately harsh. To highlight the disproportionality of her sentence, appellant's brief includes a chart comparing her fifty-year sentence and possible parole eligibility with the maximum sentences and parole eligibility for crimes which she contends are more offensive than a string of bad checks. She argues that she received a harsher sentence than that prescribed by law for all but the most serious cases of murder, sexual assault with bodily harm, and kidnapping with bodily harm—crimes punishable by life or, in the case of first degree murder, death. Additionally, she calculates that she will not be eligible for parole until she has served 16 and $2/3$ years, whereas one convicted of first degree murder may receive parole after serving only ten years of a life sentence.

The major flaw in appellant's argument is that it assumes that her sentence was imposed for a single offense, rather than five distinct crimes. Appellant characterizes her crimes as a single course of conduct arising out of her chronic gambling. This is improper. The test applied to determine whether there is only one offense is whether each count requires proof of an additional fact which the other does not. *See* Woods v. State, 94 Nev. 435, 581, P.2d 444 (1978). A defendant may not bootstrap herself into avoidance of additional penalties by claiming that the series of divisible acts, each of which had been committed with a separate identifiable intent and objective, composed an indivisible transaction, *Id.* at 438, 581 P.2d at 446. Appellant's crimes involved at least five different checks uttered or forged under differing circumstances, and thus obviously do not amount to a single offense. When appellant's sentence is viewed as one sentence for one

crime, it does indeed appear harsh. But, when her sentence is viewed as five separate sentences for five separate crimes, it pales in comparison to the sentence available for five counts of murder, for example.

Finally, in her reply brief, appellant argues that the district court abused its discretion by considering inappropriate evidence contained in the presentence report. Specifically, appellant contends that the letters submitted to the district court from her former husband and members of his family were impalpable or highly suspect evidence. *See* Deveroux v. State, 96 Nev. 388, 610 P.2d 722 (1980). This court need not consider this contention. The questioned evidence was received without objection and therefore the issue was not properly preserved for review. *See* Mercado v. State, 100 Nev. 535, 688 P.2d 305 (1984)[1].

Appellant's sentence, as noted above, was within the limits imposed by statute. Ordinarily, a sentence of imprisonment that is within the statutory limits is not considered cruel and unusual punishment. *See* Schmidt v. State, 94 Nev. 665, 584 P.2d 695 (1978). The sentencing judge has wide discretion in imposing a sentence, and that determination will not be overruled absent a showing of abuse of discretion. *See Deveroux,* 96 Nev. at 390, 610 P.2d at 723. Substantial deference must be accorded legislatures and sentencing courts when a reviewing court conducts a proportionality analysis of a sentence. According the legislature and the sentencing court the appropriate deference, we conclude that appellant's sentence is proportionate to her crimes.

Appellant's other contentions lacking merit, we hereby affirm the judgments of conviction and sentences.

Gunderson, C. J., Steffen and Young, JJ., concur.

Springer, J., dissenting:

My quarrel with the majority opinion is its failure to recognize the injustice of "stacking" sentences for relatively minor property crimes to arrive at a punishment that far exceeds that meted out for dreadful offenses like murder, armed robbery, arson, mayhem and sexual assault. My point is simply that at some stage the piling of consecutive sentences becomes excessive, unreasonable and "unusual" under the Nevada Constitution. That stage, the stage of excessiveness, has clearly been reached in this case— fifty years for five bad checks.

Although earlier release is possible, the sentence calls for imprisonment until the year 2037 when the convict is 101 years old. Other courts have recognized the absurdity of such punish-

---

[1]We note that counsel on appeal did not represent appellant in the proceedings in the trial court.

ment for property offenses. For example, in Alaska a forty-six-year-old defendant was sentenced to five years for seven bad checks, a total of thirty-five years. The Alaska Supreme Court held that even though the sentence was within the limits set by the legislature, it was constitutionally impermissible because the writing of bad checks was "not of sufficient gravity to justify imposing what amounts to a life sentence." Faulkner v. State, 445 P.2d 815 (Alaska 1968).

A sentence within statutory limits does not constitute cruel and unusual punishment unless the sentence imposed is disproportionate to the crime in a manner that is shocking to the conscience. Lloyd v. State, 94 Nev. 167, 576 P.2d 740 (1978). Had the defendant in this case been convicted on all of the bad check charges, she could have faced a penalty of 200 years, and her sentence would still have been "within the statutory limits." (Majority Opinion, p. 5.) Surely, the majority would want to draw the line somewhere; at some point their consciences must become shockable. I would draw the line here, at fifty years for five bad checks, at "what amounts to a life sentence." *Faulkner,* above.

I certainly am not saying that career criminals like appellant Houk should not be severely dealt with. She clearly could have been prosecuted under Nevada's habitual criminal act and lawfully sentenced to twenty years in prison, or, on subsequent convictions, to life imprisonment. This kind of punishment was apparently not thought to be sufficient and was not pursued.

The habitual criminal act was enacted for the purpose of ensnaring career criminals. Long-term imprisonment is imposed under this act in order to punish, deter and segregate those who persistently refuse to comply with the criminal law. Such prison terms relate not to the commission of serial offenses, often fairly petty in nature, but to the status of the offender as an incorrigible and demonstrably unredeemable societal nuisance. Had Houk been convicted as an habitual criminal, I could not object to her receiving a twenty-year sentence for being such; what I object to is a fifty-year sentence's being imposed for five acts of bad check writing.

I should grant the appeal and have the appellant returned to the district court for imposition of a reasonable sentence for writing five bad checks.