FRONTIER INSURANCE SERVICE, INC., AND BILLY WAYNE THOMASON, APPELLANTS, v. THE STATE OF NEVADA, EX REL DAVID A. GATES, COMMISSIONER OF INSURANCE, AND ALLIED FIDELITY INSURANCE COMPANY, RESPONDENTS.

No. 22674

March 24, 1993                                        849 P.2d 328

---

[3]THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this matter.

*Hamilton & Lynch,* Reno, for Appellants.

*Frankie Sue Del Papa,* Attorney General, *James C. Smith,* Deputy Attorney General, Carson City; *Vargas & Bartlett, and Phillip W. Bartlett,* Reno, for Respondents.

## OPINION

*Per Curiam:*
This appeal arises from an order of the district court releasing

over $148,000 in premiums collected by appellant Frontier Insurance Service, Inc., as agent for Allied Fidelity Insurance Company, to the Nevada Insurance Commissioner in connection with the liquidation of Allied. Discerning no error in the proceedings below, we affirm.

## FACTS

Appellant Frontier Insurance Service, Inc. ("Frontier") is an insurance agency which was engaged by respondent Allied Fidelity Insurance Company ("Allied") to sell civil surety bonds and other insurance products in Nevada. Appellant Billy Wayne Thomason is Frontier's president and sole stockholder. Allied is an Indiana insurance company in liquidation which was authorized to transact insurance business in Nevada.

Frontier began selling civil surety bonds for Allied in 1976 under what is termed a "retro agreement." Generally, under a retro agreement the agent who writes the bond shoulders the risk on the bond up to a certain amount, which in this case was $50,000. In exchange, the insurance company gives the agent a greater portion of the premium out of which the agent must pay the losses, if any, up to the negotiated limit. In order to protect itself and ensure that the agent pays the loss, the insurance company establishes a "retro reserve" account. The retro reserve account consists of a portion of the premiums held by the company to guarantee the payment of any losses.

Here, the retro agreement provided that Frontier would write civil surety bonds and collect the premiums therefor. The agreement required Frontier to deposit sixty-two and one-half percent of the collected premiums into a trust account for Allied's benefit. Frontier retained a thirty percent provisional commission for operating expenses and deposited the remaining seven and one-half percent in a collateral build-up fund[1] in Nevada. Within forty-five days after the close of the month in which the business was written, Frontier was required to remit the trust funds (sixty-two and one-half percent of collected bond premiums) to Allied in Indiana. Allied retained unconditionally twenty-two and one-half percent of the remitted funds as its share of the premiums. Allied was to place the remaining forty percent of the funds into Frontier's retro reserve account for, among other things, the payment of claims against bonds written by Frontier. The agreement required Allied to render quarterly accountings of the reserve account to Frontier. If, after deduction of losses and expenses, a positive balance remained in the reserve account, the balance would be paid to Frontier as additional, retroactive com-

---

[1]The purpose of a build-up fund is to protect the insurance company in the event the agent improperly issues a bond without obtaining adequate collateral to secure it.

mission. In the event of an account deficit, Frontier was required to satisfy the deficit from its retained commissions.

Allied experienced financial difficulties that resulted in the institution of rehabilitation proceedings in Indiana in March, 1986. Pursuant to the order of rehabilitation, the Indiana Insurance Commissioner was authorized to take possession of Allied's assets, wherever located, and administer them under court supervision. Because Allied had assets in Nevada, the Nevada Insurance Commissioner petitioned the district court for appointment as ancillary receiver pursuant to NRS 696B.230(2).[2] On April 9, 1986, the district court granted the petition and authorized the Commissioner to collect Allied's Nevada assets including, but not limited to, bank accounts and build-up funds. The Nevada Insurance Commissioner established a receivership account in Reno, Nevada, for this purpose.

As of March, 1986, Frontier ceased sending Allied the premiums Frontier had collected. According to a final accounting by Frontier of its retro surety bond business, Frontier held $148,270 in premiums due Allied for surety bonds written in January, February and March of 1986. Thomason deposited this amount into the ancillary receivership account as directed by the Commissioner. The Frontier accounting also reflected a balance in Frontier's retro reserve account of $327,969. Offsetting the $148,270 due Allied, the accounting concluded that Allied owed Frontier $179,699 in commissions.

On July 15, 1986, the Indiana court adjudged Allied insolvent. The Indiana Insurance Commissioner was appointed liquidator pursuant to Indiana law. With the approval of the district court, the Indiana and Nevada Commissioners entered into an agreement for the transmission of the premiums held in Nevada and the administration of Nevada-based claims. The agreement sought to ensure that claimants in all states could share equally in the distribution of Allied's assets. To effectuate the agreement and comply with NRS 696B.300,[3] the Nevada Commissioner moved for permission to forward the premiums to the liquidator. Frontier objected to the release of the funds, claiming entitlement thereto by virtue of a setoff against commissions owed to Frontier.

---

[2]NRS 696B.230 permits the commissioner to apply for an order appointing him ancillary receiver and directing him to conserve the assets of a foreign insurer within Nevada if the insurer's property has been sequestrated in its domiciliary sovereignty.

[3]NRS 696B.300 mandates that the ancillary receiver promptly transfer all assets to the domiciliary liquidator, after liquidation of special deposit claims and secured claims and after payment of necessary expenses.

Following a bench trial, the district court found that the premiums held by Frontier were not subject to set off under the Indiana set off provision of the Uniform Insurers Liquidation Act ("UILA"). The district court further found that Frontier had failed to demonstrate any right in law or in fact to retain the subject premiums. Consequently, the district court ordered the $148,270 in premiums released to the ancillary receiver for use in the liquidation proceedings. The judgment was certified as final pursuant to NRCP 54(b). Shortly thereafter, upon motion by Allied, the district court corrected its judgment to include accrued interest. This appeal ensued.

## DISCUSSION

### 1. *Applicable Law*

The first issue we must address is whether the Indiana UILA applies to this controversy. Frontier and Thomason (collectively, Frontier) urge the application of Nevada common law. Relying on Contrail Leasing Co. v. Executive Service Corp., 100 Nev. 545, 688 P.2d 767 (1984), Frontier argues that, as a solvent debtor, it is entitled to set off claims due from an insolvent creditor's trustee or receiver against debts due to the insolvent creditor, Allied. Thus, Frontier contends that under Nevada law, it is entitled to set off the $148,270 in premiums against commissions owed to it by Allied. We disagree.

The right to a setoff in the context of an insurance company liquidation proceeding is controlled by the UILA, interpreted in conjunction with other pertinent provisions of the insurance code. Balzano v. Bluewater Ins. Ltd., 801 P.2d 1, 2 (Colo.Ct.App. 1990), aff'd, 823 P.2d 1365 (Colo. 1992). Nevada has adopted the Uniform Insurers Liquidation Act. *See* NRS 696B.280. The general purpose of the UILA is "to make uniform the laws of those states which enact it." NRS 696B.280. Provisions of the UILA are likewise in force in Indiana and are embodied in Ind. Code Ann. Ch. 27-9. Nevada and Indiana are reciprocal states. *See* Ind. Code Ann. § 27-9-1-2(p) and NRS 696B.150.[4]

---

[4]NRS 696B.150 defines "reciprocal state" as:

> [A]ny state other than this state in which in substance and effect the provisions of the Uniform Insurers Liquidation Act, are in force, including provisions requiring that the commissioner of insurance or the equivalent supervisory officer, be the receiver of a delinquent insurer, and in which effective provisions exist for avoidance of fraudulent conveyances and unlawful preferential transfers.

Indiana's definition of "reciprocal state" is virtually identical.

In cases involving liquidation of an insurance company, courts have generally applied the liquidation statute of the domiciliary state. *See, e.g.,* Jump v. Goldenhersh, 474 F.Supp. 1306 (E.D.Mo. 1979), *aff'd,* 619 F.2d 11 (8th Cir. 1980); Allendale Mut. Ins. Co. v. Melahn, 773 F.Supp. 1283 (W.D.Mo. 1991); and McDonald v. Pacific States Life Ins. Co., 124 S.W.2d 1157 (Mo. 1939). Applying the law of the domiciliary state advances the UILA's purpose of "centraliz[ing] insurance rehabilitation and liquidation proceedings in one state's court so as to protect all creditors equally." Dardar v. Ins. Guaranty Ass'n, 556 So.2d 272, 274 (La.Ct.App. 1990). Here, Indiana is the domiciliary state. *See* NRS 696B.070.

Since Allied is an Indiana corporation being liquidated under the laws of Indiana, the application of the Indiana UILA is appropriate in this case. At the time of trial, there were 19 other ancillary receiverships pending. We are convinced that the interests of uniformity and the orderly and equitable administration of Allied's claims and obligations require the application of Indiana law. Therefore, we conclude that Ind. Code Ann. § 27-9-3-28, governing setoffs, rather than *Contrail,* controls this dispute.

## 2. *The Effect of Indiana Law on Setoff Issue*

Having concluded that Indiana law applies, we must next determine whether Indiana law entitles Frontier to set off the premiums due Allied against the commissions owed to Frontier.

Ind. Code Ann. § 27-9-3-28 governs the issue of setoffs. Subsection (a) mandates the set off of "mutual debts or mutual credits between the insurer and another person in connection with any action or proceeding under IC 27-9." However, set off is prohibited to any person where "[t]he obligation of the person is to pay premiums, whether earned or unearned, to the insurer."

Frontier contends it is entitled to set off the premiums against the commissions due it because (1) the obligation to pay premiums does not include premiums due on surety bonds; and (2) the debts between Allied and Frontier were mutual.

Surety contracts have been held to come within the purview of the liquidation statutes. Matter of Wisconsin Sur. Corp., 332 N.W.2d 860 (Wis.Ct.App. 1983). Furthermore, under both Indiana and Nevada law, insurers authorized to transact insurance business are within the scope of the liquidation statutes. NRS 696B.020; Ind. Code Ann. § 27-9-1-1. Transacting insurance business includes the issuance of surety bonds. *See* NRS 691B.010 and Ind. Code Ann. § 27-1-5-1.[5]

---

[5]NRS 691B.010 provides that contracts of "surety insurance" are subject to NRS 687B pertaining to insurance contracts as well as other applicable sections of the Insurance Code. Ind. Code Ann. § 27-1-5-1 includes surety contracts among the classes of insurance a company may make.

Interpreting these statutes in conjunction with the UILA, we conclude that the "obligation to pay premiums" includes premiums paid for surety bonds. Therefore, the prohibition against set off is applicable to Frontier.

Additionally, we reject Frontier's contention that set off is mandated on the basis of mutuality between Allied's and Frontier's respective debts. "Mutuality" has been defined as a debt " 'due to and from the same persons in the same capacity.' " Superintendent of Ins. of New York v. Baker & Hostetler, 668 F.Supp. 1057, 1060 (N.D. Ohio 1986), *aff'd*, 826 F.2d 1065 (6th Cir. 1987) (quoting In re Consolidated Indem. & Ins. Co., 38 N.E.2d 119, 120 (N.Y. 1941)). In dismissing a law firm's counterclaim for lack of mutuality, the federal district court stated that:

> Applying the rule established in *Consolidated,* it is clear that the two claims in question here lack the requisite quality of mutuality. Baker held Union Indemnity's funds in its client trust account. Thus the Superintendent, in whom are vested Union Indemnity's rights by virtue of the Liquidation Order, asserts the rights of a cestui que trust against a trustee. Baker, however, asserts the rights of a creditor against his debtor. The claims are therefore not "due to and from the same persons in the same capacity nor are they held in the same right," and no offset may be allowed.

*Baker & Hostetler,* 668 F.Supp. at 1061. *See also* Charles W. Virgin Ins. Agency, Inc. v. Alabama General Ins. Co., 114 So.2d 524, 525 (Fla.Ct.App. 1959) ("Absent special contractual or statutory provisions . . . it is well settled that the agent of an insurance company under receivership is not entitled to set off against the company funds an indebtedness of the company to him.").

Here, the debts between Allied and Frontier are not mutual because the premiums collected by Frontier were held in trust for the benefit of Allied while any money Allied may owe to Frontier is a mere debt.[6] Even if Allied were obligated to maintain a separate reserve account for the payment of Frontier claims, as Frontier contends, this, by itself, does not create an express trust. *See* Pioneer Annuity Life Ins. Co. v. National Equity Life Ins. Co., 765 P.2d 550, 554 (Ariz.Ct. App. 1988). As stated by the *Pioneer* court:

---

[6]Paragraph 7 of the 1984 agreement provides that Frontier "shall hold all premiums collected as a fiduciary trust" while "commissions payable to Frontier are debts" owed to Frontier by Allied.

> [T]he norm in the insurance industry is that premiums, including reinsurance premiums, become part of the general assets of the insurer. We quote from Mowbray and Blanchard, *Insurance* 394 (5th Edition, 1961): . . . "Since reserves constitute by far the largest part of the liabilities of an insurer, it follows that they are the principal determinant of the amount of assets that the insurer must have in order to remain solvent. But there is no 'reserve fund' held to meet the obligations measured by the total reserves or those measured by any particular reserve. *The total assets of the insurer are available without division to meet the total liabilities.*"

*Id.* (emphasis in original); *see also* In the Matter of the Liquidation of the Union Indem. Ins. Co. of New York, 502 N.Y.S.2d 907, 909 (Sup.Ct. 1986) (applying the terms "general assets" and "special deposits" as defined in the New York liquidation statute,[7] funds segregated by an insurer for the payment of claims constituted general assets).

Thus, irrespective of whether the funds were in a segregated account, the reserve account funds constituted general assets of Allied's estate and not a trust account for Frontier's benefit. Any obligation by Allied to pay commissions to Frontier constituted a debt, whereas Frontier was required to hold the collected premiums in trust.

Because of the lack of mutuality and because Frontier had an obligation to pay premiums to Allied, we hold that Frontier is precluded from setting off the premiums against funds held in the reserve account.

3. *Modification of Judgment to Include Accrued Interest*

After the judgment was certified as final, the district court

---

[7]The definitions used by the *Union Indemnity* court are virtually identical as those in the Indiana and Nevada UILA. "General assets" means:

> [A]ll property not specifically mortgaged, pledged, deposited, or otherwise encumbered for the security or benefit of specified persons. As to specifically encumbered property, "general assets" includes all such property or its proceeds in excess of the amount necessary to discharge the sum or sums secured by that property. Assets held in trust and on deposit for the security or benefit of all policyholders or all policyholders and creditors, in more than a single state, shall be treated as general assets.

Ind. Code Ann. § 27-9-1-2(j); NRS 696B.090. Ind. Code Ann. § 27-9-1-2(r) defines "special deposit claim" as "any claim secured by a deposit made under law for the security or benefit of a limited class or classes of persons, but not including any claim secured by general assets." *See also* NRS 696B.170.

corrected it to include accrued interest. Frontier contends that this was error because correcting the judgment constituted a judicial function not correctable under NRCP 60(a). We disagree.

NRCP 60(a) permits the district court to correct clerical mistakes and errors arising from oversight or omission "at any time of its own initiative or on motion of any party." Where the error is a "failure to make the written conclusions of law and judgment truly speak the determination which had been made," it is clerical rather than judicial error. *See* Smith v. Epperson, 72 Nev. 66, 69, 294 P.2d 362, 363 (1956).

After the conclusion of trial and upon review of post-trial briefs, the district court determined that Frontier had demonstrated no right in law or in fact which would entitle it to keep the collected premiums. Implicit in the district court's finding is the determination that Frontier had no right to accrued interest. Only by correcting its order to include accrued interest would the judgment conform to the district court's determination. Therefore, we hold that the district court properly corrected a clerical error in its order including the release of the accrued interest to the ancillary receiver.

Frontier's remaining contention that the district court erroneously refused to honor a preliquidation agreement creating an account stated is raised for the first time on appeal and is unsupported by authority. We therefore decline to consider it. *See* Old Aztec Mine, Inc. v. Brown, 97 Nev. 49, 623 P.2d 981 (1981), and Woods v. State, 94 Nev. 435, 581 P.2d 444 (1978).

## CONCLUSION

For the reasons specified above, we conclude that the district court properly ordered the release of the premiums, together with accrued interest, to the ancillary receiver. Accordingly, the judgment entered by the district court is affirmed.[8]

---

[8]THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this matter.