# IN THE SUPREME COURT OF THE STATE OF NEVADA

WILBERT KNIGHT,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 79603

FILED

NOV 09 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of conspiracy to commit robbery; two counts of invasion of the home while in possession of a deadly weapon; two counts of burglary while in possession of a deadly weapon; two counts of conspiracy to commit kidnapping; first-degree kidnapping with the use of a deadly weapon; two counts of first-degree kidnapping with the use of a deadly weapon, victim 60 years of age or older; robbery with the use of a deadly weapon; two counts of robbery with the use of a deadly weapon, victim 60 years of age or older; battery with intent to commit a crime, victim 60 years of age or older; battery, victim 60 years of age or older; and possession of stolen property. Eighth Judicial District Court, Clark County; Eric Johnson, Judge.

Appellant Wilbert Knight, along with Quincy Williams and Brandon Black, was arrested in connection with three home invasions during July and August 2015. In all three home invasions, the intruders took small items such as cell phones, jewelry, and cash. The intruders also beat the victims, some brutally. During the first home invasion, it was alleged that one of the intruders briefly touched the elderly victim's vagina. In the second home invasion, the intruders digitally penetrated the female victim and attempted to rape her.

DNA results from the first home invasion matched Knight's DNA, and DNA results from the second home invasion matched Williams'

20-40900

DNA. Officers began surveilling both suspects shortly before the third home invasion, and viewed Williams and his girlfriend visiting Knight's residence. Within a few hours of receiving notice of the third home invasion, officers surveilled Williams' apartment and spotted a vehicle that matched an eyewitness description of a damaged vehicle at the third robbery. Officers observed as Black, Black's girlfriend, and Knight drove that vehicle to an In-N-Out, and returned to the apartment complex. Officers established that Black had an apartment at that complex. Through their investigation and surveillance, detectives established that Williams, Knight, and Black knew each other and were all connected through Williams' family: Knight was dating Williams' mother, and Black was dating Williams' sister. Officers obtained search warrants for the suspects' apartments and the vehicle and SWAT teams apprehended the three men. Officers found property from the first home invasion in Knight's apartment, property from the second home invasion in Williams' apartment, and property from the third home invasion in Black's apartment.[1]

The defendants each moved to sever the trial. The district court severed Black's trial but declined to sever Knight and Williams' trial. A jury convicted Knight of the charges related to the first and third home invasions,[2] and convicted Williams of charges related to the second home invasion.

Knight advances several arguments on appeal, including that he was denied his constitutional right to conflict-free counsel during pretrial

---

[1]Officers also found a shotgun shell in Knight's apartment that matched a shotgun in Black's apartment, and Williams' DNA on a gun in Knight's apartment.

[2]The jury did not, however, convict Knight of intent to sexually assault the elderly victim in the first home invasion.

hearings on the motion to sever, the district court erred by failing to sever his trial from Williams', insufficient evidence supports the convictions, the district court erred by directing the testimony of two witnesses, and the district court abused its discretion at sentencing. We disagree with these arguments and affirm the judgment of conviction.

Knight first argues his Sixth Amendment right to conflict-free counsel was violated when Williams' counsel represented both Williams and Knight during two of multiple hearings on the motion to sever the trial. The United States Supreme Court has "construed the Sixth Amendment guarantee [to right of counsel] to apply to 'critical' stages of the proceedings." *United States v. Wade*, 388 U.S. 218, 224 (1967). Pretrial proceedings are often considered "critical" stages because "the results might well settle the accused's fate and reduce the trial itself to a mere formality." *Id.* And we review violations of a defendant's Sixth Amendment right to counsel of choice at the pretrial stage for harmless error. *See Patterson v. State*, 129 Nev. 168, 178-79, 298 P.3d 433, 439-40 (2013) (addressing a right-to-counsel issue that arose during a preliminary hearing under a harmless-error standard rather than under a structural-error standard because the alleged error did not result in the "total deprivation of counsel"). Here, we need not determine whether the relevant hearings were critical-stage proceedings or whether Knight's Sixth Amendment rights were violated by the dual representation, as any error in the dual representation was harmless. Both Knight and Williams sought severance, and Williams' counsel pursued that common goal when representing Knight. And Knight fails to show how his attorney's arguments would have affected the outcome where the district court stated that it decided the issue based upon the written briefs. Further, the court held a subsequent hearing on the motion

SUPREME COURT
OF
NEVADA

(O) 1947A

3

with Knight's attorney present after Knight complained of the dual representation.[3]

Knight further fails to demonstrate joinder was prejudicial. Knight contends the presentation of antagonistic defenses and risk of unfair prejudice, coupled with the weak evidence, required the district court to sever his case from Williams'. Multiple defendants may be charged together if the indictment alleges they participated in the same acts constituting the offense, and the law favors joint trials. NRS 173.135; *Jones v. State*, 111 Nev. 848, 853, 899 P.2d 544, 547 (1995). Where a district court errs in failing to sever a joint trial, we will reverse only if the defendant shows that joinder had "a substantial and injurious effect on the verdict." *Marshall v. State*, 118 Nev. 642, 647, 56 P.3d 376, 379 (2002). Here, even assuming, arguendo, the district court erred, any error was harmless. Knight does not show that being tried with Williams prejudiced his case or affected the verdict where he and Williams were not convicted of charges related to the same home invasions. Moreover, DNA evidence and the victims' stolen property tied Knight to the first home invasion, independent of any evidence against Williams. Therefore, we conclude that the district court did not abuse its discretion in denying Knight's motion to sever. *Id.* at 646-47, 56 P.3d at 379.

Knight next contends insufficient evidence supports the convictions related to the third home invasion or any of the kidnapping charges, and that any movement of the victims was incidental to the

---

[3]We are not persuaded that the rehearing on the motion to sever was insufficient to protect Knight's rights under these facts. Critically, Nevada law requires severance whenever it appears that joinder will prejudice the defendant, and the district court has a continuing duty to sever a trial whenever prejudice appears. NRS 174.165(1); *Marshall v. State*, 118 Nev. 642, 646, 56 P.3d 376, 378-79 (2002).

robberies. In considering a claim of insufficient evidence, we "view[ ] the evidence in the light most favorable to the prosecution" to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Former NRS 205.067(1) provides that a person is guilty of invasion of the home when the person "forcibly enters an inhabited dwelling without permission of the owner, resident or lawful occupant, whether or not a person is present at the time of the entry." 1995 Nev. Stat., ch. 443, § 125(1), at 1215. "Robbery is the unlawful taking of personal property . . . in the person's presence, against his or her will, by means of force or violence or fear of injury . . . ." NRS 200.380(1). And "[a] person who willfully . . . confines . . . a person by any means whatsoever with the intent to hold or detain . . . the person . . . for the purpose of . . . robbery upon or from the person . . . is guilty of kidnapping in the first degree" NRS 200.310(1). Incidental movement from one room to another during a robbery is, alone, insufficient to sustain a separate kidnapping charge. *Wright v. State*, 94 Nev. 415, 417-18, 581 P.2d 442, 443-44 (1978), *holding modified by Mendoza v. State*, 122 Nev. 267, 274-75, 130 P.3d 176, 180 (2006). A kidnapping charge will lie where the movement, seizure, or restraint of the victim (1) "serves to substantially increase the risk of harm to the victim over and above that necessarily present in an associated offense," (2) "substantially exceeds that required to complete the associated crime charged," or (3) "stands alone with independent significance from the underlying charge." *Mendoza*, 122 Nev. at 274-75, 130 P.3d at 180-81.

Sufficient evidence linking Knight to the third home invasion and robbery was presented to the jury. It is the function of the jury, not this court, to weigh that evidence, *see, e.g., Rose v. State*, 123 Nev. 194, 202-03,

SUPREME COURT
OF
NEVADA

(O) 1947A

5

163 P.3d 408, 414 (2007), and this was a ten-day jury trial during which the district court admitted hundreds of exhibits, including evidence of photographs and video surveillance of the three suspects. Importantly, less than three hours after the third home invasion and robbery, detectives surveilled a damaged car seen at that crime, and watched as Black, Black's girlfriend, and Knight drove in that car to an In-N-Out, and returned to and stayed together at Black's apartment. When detectives thereafter obtained and executed the search warrant at Knight's residence during early morning hours, they apprehended Black as he drove away from Knight's residence, and property stolen from that third home invasion and robbery was found inside Black's apartment. Detectives testified to observing the three suspects and their girlfriends interacting with each other at the defendants' apartments around the time of the third home invasion and robbery, and the jury was privy to and observed the surveillance photographs. Moreover, during the police investigation, the victim from the third home invasion identified Black during a photo lineup. The victim also described the two robbers as one being taller than the other and one being chubbier than the other, and the victim testified that the chubbier one held the gun. The jury was able to view and compare all of the photographic lineups conducted by detectives with the victim from the third home invasion and robbery and the surveillance photographs that were taken in real time shortly after the third home invasion and robbery. The jury could thereby determine whether the victim's description at trial of the robbers fit surveillance and photographs of Knight taken around the time of the crime, further circumstantially linking Knight to the crime.[4] From the

_____

[4]To the extent conflicting evidence was presented regarding whether Knight fit the victim's discription, it is for the jury, not this court, to weigh such conflicting evidence. *See Stewart v. State*, 94 Nev. 378, 379, 580 P.2d

Supreme Court
OF
Nevada

(O) 1947A

6

totality of the evidence adduced at trial against Knight as well as against coconspirator Black, a rational juror could properly infer that Knight was involved with Black in a conspiracy regarding the third home invasion and robbery. *See, e.g., Thomas v. State*, 114 Nev. 1127, 1143, 967 P.2d 1111, 1122 (1998) (explaining that conspiracy is seldom supported by direct proof and is generally established by inferences drawn from the parties' conduct).

The evidence presented at trial also supports each of the kidnapping convictions. As to the first home invasion, although forcing the elderly victims to show the robbers the location of their valuables was likely incidental to the robbery, moving the elderly victims into a different room, forcing them to lie down, and tying their hands with zipties was unnecessary to complete the robbery and substantially increased the risk of harm to the victims. *C.f. Mendoza*, 122 Nev. at 274-75, 130 P.3d at 180-81. Specifically, the action of restraining the elderly couple and leaving them restrained after taking the valuables increased the risk of harm to both of the elderly victims. As to the male victim, the robbers left him in a state where he had no choice but to crawl on the floor, stand up by leaning against the wall, and activate the garage door with his nose in order to escape the house. As to the female victim, it was unnecessary to make an elderly woman attempt to go up the stairs to show the robbers where the valuables were, and when realizing she had difficulty making it up the stairs, force her to lie face down with her hands tied behind her back. Moreover, violently kicking the panicked, frail victim in the face when she objected to being sexually assaulted was unnecessary and compounded the danger. If the male victim was not able to call for help, there is no telling how much harm she would have suffered. This degree of confinement was unnecessary

_____

473, 473 (1978) (explaining that the jury determines the credibility of conflicting testimony).

SUPREME COURT
OF
NEVADA

(O) 1947A

to complete the robbery and increased the risk of harm to both elderly victims.

As to the third home invasion, moving the victim, tying his hands behind his back, violently hitting him over the head with a gun, and covering his head with a blanket while he was facedown was unnecessary to accomplish the robbery, because he already had seen the perpetrators and the face covering increased the risk of asphyxiation. Also, the restraint here was unnecessarily lengthy because the perpetrators left without removing the blanket or untying the victim. Moreover, the risk of harm was exacerbated because the victim was in a weakened physical condition after he had recently returned home from a three-month hospital stay.[5]

Knight next alleges that the district court improperly directed witness testimony on two occasions, resulting in prejudicial and inaccurate statements. Knight's arguments fail for multiple reasons, including that Knight fails to explain how either instance was, in fact, prejudicial, as the statements appeared to favor Knight; Knight is estopped from alleging error to the extent he expressly agreed to the admission of one of the statements below; and the record belies Knight's arguments that the statements substantively misrepresented the evidence. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) (stating that this court need not consider issues that are not cogently argued); *Jones v. State*, 95 Nev. 613, 618, 600 P.2d 247, 250 (1979) (recognizing that where a defendant participates in the

---

[5]Although Knight does not present specific arguments regarding the lack of evidence to support the deadly weapon enhancements associated with the kidnapping charges, our review of the record demonstrates that sufficient evidence exists to support the convictions on these charges.

alleged error, he is estopped from raising any objection on appeal). We therefore need not address these arguments further.[6]

Lastly, Knight argues that, during the sentencing, the district court erred by relying on impalpable or highly suspect evidence by considering charges of which Knight was acquitted. We review for an abuse of discretion, *Houk v. State*, 103 Nev. 659, 664, 747 P.2d 1376, 1379 (1987), and disagree, *see Denson v. State*, 112 Nev. 489, 492, 915 P.2d 284, 286 (1996) (explaining reversal of a sentence is warranted only if the sentence "is supported *solely* by impalpable and highly suspect evidence"). Although the district court's reference to acquitted crimes was perhaps inarticulate, the overall tone of the district court's comments suggest the court relied on the convicted crimes and the general violence in those crimes to determine the appropriate sentence. We are also cognizant that the district court presided over a ten-day trial, heard substantial evidence regarding the

---

[6]Knight also argues that the prosecutor's statement that families commit crimes together constituted prosecutorial misconduct. Because Knight failed to object at trial, our review is for plain error, *Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008), and we conclude the evidence and surrounding circumstances, aside from the family relationship, implicated each defendant in at least one of the robberies and shows Knight's guilt was not proven here solely by familial relationships. *See United States v. Brodie*, 403 F.3d 123, 151 (3d Cir. 2005) (holding that guilt "cannot be proven solely by familial relationships"). And we need not address whether the prosecutor misrepresented the foreign money found in Black's apartment as "Chinese money," where Knight failed to include the photograph of the money entered into evidence in the appellate record. *See* NRAP 30(b)(3) (requiring an appellant to include in his or her appendix "any . . . portions of the record essential to determination of issues raised in [the] appeal"); *Johnson v. State*, 113 Nev. 772, 776, 942 P.2d 167, 170 (1997) (explaining an appellant must provide an adequate appellate record); *see also Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 603, 172 P.3d 131, 135 (2007) (this court presumes missing portions of the record support affirmance).

violence of the robberies, and was keenly aware of the evidence relevant to each defendant. Moreover, Knight neither disputes that the crimes were, in fact, violent, nor shows that the court relied solely on impalpable and highly suspect evidence. Knight also does not argue the sentence fell outside the statutory guidelines. *See Dunham v. State*, 134 Nev. 563, 569-70, 426 P.3d 11, 16 (2018) (affirming in part because the sentence fell within the statutory guidelines). We therefore conclude that the district court did not abuse its discretion at sentencing.[7]

Based on the foregoing, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Gibbons

_____, J.
Silver

cc:    Hon. Eric Johnson, District Judge
       Resch Law, PLLC d/b/a Conviction Solutions
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk

---

[7]We also conclude that cumulative error does not warrant reversal. *See Pascua v. State*, 122 Nev. 1001, 1008 n.16, 145 P.3d 1031, 1035 n.16 (2006) (rejecting appellant's argument of cumulative error where the "errors were insignificant or nonexistent").

STIGLICH, J., concurring in part and dissenting in part:

   While I agree with the majority that most of Mr. Knight's arguments do not warrant relief, I disagree regarding the sufficiency of the evidence for the convictions arising from the home invasion on August 31, 2015. The evidence presented did not connect Knight to the August 31 crimes, and the State's theory rested on a vague description of Mr. Black's accomplice. That Knight was observed with Black several hours later and that substantial evidence of Black's guilt was produced does not meet the standard to sustain Knight's convictions arising out of the incident. While the majority defers to purportedly conflicting evidence implicating Knight,[1] I would conclude that the evidence was not conflicting but absent. Respectfully, I concur in part and dissent in part.

_____, J.
Stiglich

---

[1]The "evidence" relied upon by the majority is the false syllogism put forth by the State in closing argument that because Knight is chubbier than Black, he is the other perpetrator. Of course, this completely ignores the actual testimony of Wang that Black was the chubbier of the two perpetrators and that Black had the gun.