129 Nev., Advance Opinion 17

IN THE SUPREME COURT OF THE STATE OF NEVADA

MICHAEL D. PATTERSON,
Appellant,
    vs.
THE STATE OF NEVADA,
Respondent.

No. 54408

**FILED**

APR 04 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of conspiracy to commit murder, murder with the use of a deadly weapon, and discharging a firearm at or into a vehicle. Eighth Judicial District Court, Clark County; Valorie J. Vega, Judge.

Affirmed.

Law Office of Lisa Rasmussen, PC, and Lisa A. Rasmussen, Las Vegas, for Appellant.

Catherine Cortez Masto, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Steven S. Owens, Chief Deputy District Attorney, and Carrie A. Morton, Deputy District Attorney, Clark County, for Respondent.

---

BEFORE HARDESTY, PARRAGUIRRE and SAITTA, JJ.

OPINION

By the Court, HARDESTY, J.:

Appellant Michael Patterson was convicted of conspiracy to commit murder, murder with the use of a deadly weapon, and discharge of

13-09834

a firearm into a vehicle. He now appeals arguing, among other things, that his Sixth Amendment right to counsel was violated when he was denied his counsel of choice at his preliminary hearing before the justice court.

We recognize that the preliminary hearing is a "critical" stage of criminal proceedings at which a defendant's Sixth Amendment right to counsel attaches, and we conclude that the justice court's denial of Patterson's request to be represented by retained counsel at the preliminary hearing violated Patterson's qualified right to counsel of his choice. In particular, the justice court failed to conduct a sufficient inquiry into the request. We further conclude, however, that the denial of Patterson's counsel of choice at the preliminary hearing is subject to harmless-error review, and that the error was harmless. Accordingly, we affirm.

<u>FACTS AND PROCEDURAL HISTORY</u>

Patterson's conviction stems from the shooting death of Bobby Wilkerson in Las Vegas. Video surveillance footage of a parking lot on the night of Wilkerson's death revealed that a person exited the passenger side of a vehicle, approached the driver's side of Wilkerson's car, and then jumped back into the passenger side of the other vehicle and drove away. Wilkerson then exited his car and fell to the ground. He was later found lying outside of his car with a shotgun wound to his head.

Wilkerson's mother informed the police that her son was planning to meet with Patterson that evening to resolve a dispute concerning a puppy that Patterson sold to Wilkerson. The police located the vehicle pictured in the surveillance footage that left the scene in the apartment complex where Patterson lived. The vehicle belonged to

Patterson's roommate, who told the police that she frequently let her boyfriend[1] and Patterson use it. A search of Patterson's cell phone records revealed that he made frequent calls to Wilkerson's cell phone, but the calls stopped the night of the shooting.

The police then issued an arrest warrant for Patterson, and he was later apprehended in Chicago, Illinois, by FBI Agent Pablo Araya. During his interrogation by Agent Araya, Patterson allegedly confessed to shooting Wilkerson and described where in his apartment he hid the shotgun used in the killing. This interrogation was not recorded, but following the interrogation, the police found the shotgun in Patterson's apartment in the exact location he stated in his alleged confession.[2] Agent Araya's testimony was the only evidence of the interrogation presented at trial.

Attorney Richard Tannery was appointed to represent Patterson on his criminal charges. Patterson retained another attorney, Garrett Ogata, to represent him the evening prior to his preliminary hearing before the justice court.[3] At the preliminary hearing, Ogata sought substitution as counsel of record for Patterson. Ogata also requested that the justice court continue Patterson's preliminary hearing so that he could complete his preparation for the case. Without asking

---

[1]The boyfriend was charged as a codefendant, but is not a party to this appeal. He allegedly drove the vehicle the night of the shooting.

[2]Patterson was arrested in Chicago and extradited to Nevada after his interrogation.

[3]Patterson's mother retained Ogata. However, Patterson met with Ogata a week and a half earlier to discuss representation.

Patterson any questions concerning Ogata's representation, the justice court denied Ogata's request because Ogata was not prepared to proceed immediately, and Patterson's appointed attorney, Tannery, was present and prepared to represent him. However, the justice court allowed Ogata to sit at counsel's table and provide input to Tannery. Following the preliminary hearing, it appears that Ogata spoke with Tannery several times but Ogata never requested that he be substituted as Patterson's counsel of record for trial. Patterson was ultimately convicted on all charges. This appeal follows.

## DISCUSSION

On appeal, we address whether denial of a defendant's request to be represented by retained counsel at the preliminary hearing stage, when the defendant has been represented by appointed counsel up to that point, violates the Sixth Amendment right to counsel of choice, and if so, whether such a violation is subject to harmless-error review. We conclude that there was a Sixth Amendment violation, and reaffirming our prior jurisprudence, we hold that the error is subject to harmless-error review. We further conclude that the State did not violate Brady v. Maryland, 373 U.S. 83 (1963), regarding disclosure of evidence.[4]

---

[4]Patterson also seeks reversal of his conviction on the grounds that (1) the district court abused its discretion when it denied Patterson's motion to suppress his arrest warrant because it did not set forth specific factual or legal findings in its order; (2) the arrest warrant did not contain sufficient probable cause; and (3) the district court improperly denied Patterson a hearing pursuant to Jackson v. Denno, 378 U.S. 368 (1964), regarding the voluntariness of his confession. With regard to the motion to suppress and the arrest warrant, we conclude that these arguments are without merit, as there was "a substantial basis for concluding that probable cause existed." Doyle v. State, 116 Nev. 148, 158, 995 P.2d 465, 472 (2000). Moreover, although the lack of factual findings in an order

*continued on next page...*

<u>The preliminary hearing is a "critical" stage at which a defendant's Sixth Amendment right to counsel attaches</u>

The Sixth Amendment to the United States Constitution guarantees a criminal defendant's right to counsel, U.S. Const. amend. VI, and that right is protected against state action by the Due Process Clause of the Fourteenth Amendment. U.S. Const. amend. XIV; <u>Gideon v. Wainright</u>, 372 U.S. 335, 341-45 (1963). The United States Supreme

---

*...continued*

may prevent appellate review and may be grounds for reversal, <u>see</u> <u>Somee v. State</u>, 124 Nev. 434, 443, 187 P.3d 152, 158 (2008), we further conclude that the arrest warrant attached to the motion in limine sufficiently enabled us to review the district court's decision. Additionally, we decline to consider Patterson's <u>Jackson v. Denno</u> argument because Patterson had the burden to request such a hearing and he never made that request. <u>See</u> <u>Wilkins v. State</u>, 96 Nev. 367, 372, 609 P.2d 309, 312 (1980) ("[F]ailure to request a voluntariness hearing below precludes appellate consideration."). Patterson further argues that the district court erred by: (1) failing to record several bench conferences, (2) failing to properly handle juror's questions, (3) failing to have Patterson present during a telephone conference between the court and counsel, and (4) giving improper jury instructions on manslaughter. We conclude that these arguments are without merit and require no further discussion. Finally, Patterson argues that the district court erred by admitting rap lyrics that were inadmissible bad acts evidence. We note that Patterson never objected to the admission of these lyrics at trial. <u>See</u> <u>Flores v. State</u>, 121 Nev. 706, 722, 120 P.3d 1170, 1180-81 (2005) ("'[F]ailure to object will [generally] preclude appellate review of an issue' unless plain error affecting the defendant's substantial rights is shown." (second alteration in original) (quoting <u>Leonard v. State</u>, 117 Nev. 53, 63, 17 P.3d 397, 403 (2001))). Furthermore, even if we were to agree with his contention that the admission of the rap lyrics was plain error, we conclude that Patterson has failed to show "actual prejudice or a miscarriage of justice." <u>See</u> <u>Green v. State</u>, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003) ("In conducting plain error review, . . . the burden is on the defendant to show actual prejudice or a miscarriage of justice.").

Court has "construed the Sixth Amendment guarantee [of counsel] to apply to 'critical' stages of the proceedings." United States v. Wade, 388 U.S. 218, 224 (1967). Pretrial proceedings are often considered to be "critical" stages because "the results might well settle the accused's fate and reduce the trial itself to a mere formality." Id.; see also Powell v. Alabama, 287 U.S. 45, 57 (1932) (stating that the right to counsel "during perhaps the most critical period of the proceedings . . . that is to say, from the time of [a criminal defendant's] arraignment until the beginning of [the defendant's] trial . . ." is as important "as [it is] at the trial itself"). A pretrial proceeding is "critical" if "potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." Wade, 388 U.S. at 227.

The Supreme Court has recognized that the presence of counsel at a preliminary hearing may avoid prejudicial effect to the defendant's rights because: (1) skilled cross-examination of the State's witnesses may expose fatal flaws in the State's case, give rise to impeachment evidence for the subsequent trial, and preserve testimony from unavailable witnesses for later use at trial; (2) an attorney is better equipped than a lay defendant to "effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial"; and (3) an attorney is in a better position than a lay defendant to make arguments concerning matters like psychiatric evaluations or bail at preliminary hearings. Coleman v. Alabama, 399 U.S. 1, 9-10 (1970) (plurality).

In addition, this court has previously recognized that preliminary hearings can give rise to Sixth Amendment concerns. See Messmore v. Fogliani, 82 Nev. 153, 154-55, 156, 413 P.2d 306, 306-07

SUPREME COURT
OF
NEVADA

(O) 1947A

6

(1966) (holding that an unrepresented defendant's Sixth Amendment rights to counsel and to confrontation of witnesses were violated when witness testimony taken during the preliminary hearing was introduced into evidence at trial). We have also recognized that a preliminary hearing is an adversarial proceeding at which a defendant's Sixth Amendment right to counsel attaches. See Kaczmarek v. State, 120 Nev. 314, 326, 91 P.3d 16, 25 (2004) ("[T]he Sixth Amendment right to counsel does not even attach in a case until adversarial proceedings have commenced . . . "'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'"" (quoting Fellers v. United States, 540 U.S. 519, 523 (2004) (quoting Brewer v. Williams, 430 U.S. 387, 398 (1977)))); see also Dewey v. State, 123 Nev. 483, 488, 169 P.3d 1149, 1152 (2007).

Because the preliminary hearing is a "critical" stage in the criminal proceeding at which a defendant's Sixth Amendment right to counsel attaches, we must examine the justice court's denial of Patterson's request for counsel of his choice to determine whether error occurred. We review the justice court's denial of Patterson's request to substitute Ogata as counsel for an abuse of discretion. Young v. State, 120 Nev. 963, 968, 102 P.3d 572, 576 (2004).

The Sixth Amendment right to counsel encompasses two different rights, namely, the right to effective assistance of counsel and the right of a non-indigent defendant to be represented by the counsel of his or her choice. U.S. v. Rivera-Corona, 618 F.3d 976, 979 (9th Cir. 2010). The first right (to effective assistance of counsel) is at issue where an indigent criminal defendant seeks to replace court-appointed counsel with new appointed counsel. Id. at 978. Thus, the three-part inquiry that is used to

(O) 1947A

evaluate an attempt to substitute one appointed attorney for another, see Young, 120 Nev. at 968-69, 102 P.3d at 576, "is designed to determine whether [an] attorney-client conflict is such that it impedes the adequate representation that the Sixth Amendment guarantees to all defendants, including those who cannot afford to hire their own attorneys," Rivera-Corona, 618 F.3d at 979. But the other Sixth Amendment right is at issue where a criminal defendant seeks to replace court-appointed counsel with privately retained counsel, or previously retained counsel with newly retained counsel, or privately retained counsel with court-appointed counsel. In that context, the focus is on the right to counsel of one's choice. Id.

Generally, a defendant is free to replace existing counsel with retained counsel. Miller v. Blackletter, 525 F.3d 890, 895 (9th Cir. 2008). The right to counsel of one's choice is not absolute, however, and a court has "wide latitude in balancing the right to counsel of choice against the needs of fairness . . . and against the demands of its calendar." Gonzalez-Lopez, 548 U.S. at 152; see also Ryan v. Dist. Ct., 123 Nev. 419, 426, 168 P.3d 703, 708 (2007) ("[C]riminal defendants 'who can afford to retain counsel have a qualified right to obtain counsel of their choice.'" (quoting United States v. Ray, 731 F.2d 1361, 1365 (9th Cir. 1984))). Thus, the appropriate test to determine whether the justice court abused its discretion in denying Patterson's request to substitute retained counsel (Ogata) in place of appointed counsel (Tannery) is whether denying the substitution: (1) would have significantly prejudiced Patterson, or (2) "was untimely and would result in a 'disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.'"

<u>People v. Lara</u>, 103 Cal. Rptr. 2d 201, 211-12 (Ct. App. 2001) (quoting <u>People v. Ortiz</u>, 800 P.2d 547, 552 (Cal. 1990)).

At the commencement of the preliminary hearing, Patterson requested to substitute his court-appointed counsel, Tannery, with his retained counsel, Ogata. Ogata informed the justice court that he had been retained the day before the preliminary hearing and had reviewed about half of the discovery in the case. The justice court denied Patterson's request for chosen counsel because Ogata was unprepared, Tannery was present and prepared to represent Patterson, and the State had an out-of-state witness (FBI agent Araya) present to testify. However, the justice court's reasons for denying Patterson's request did not take into consideration any prejudice to Patterson or assess whether Ogata's substitution would cause an unreasonable disruption in the proceedings.

Although Ogata's substitution may have caused some inconvenience and delay because Patterson's request was made at the preliminary hearing, the justice court failed to "balance the defendant's interest in new counsel against the disruption, if any, flowing from the substitution." <u>Lara</u>, 103 Cal. Rptr. 2d at 212. For example, the justice court did not inquire as to the amount of time Ogata would need to prepare for the preliminary hearing or the inconvenience to the State or its out-of-state witness resulting from a short delay. Furthermore, any delay in the preliminary hearing to allow Patterson's chosen counsel time to prepare likely would have been minimal given Ogata's review of some of the discovery and the significantly lesser evidentiary burden required to be met at the preliminary hearing, <u>see Sheriff v. Middleton</u>, 112 Nev. 956, 961, 921 P.2d 282, 286 (1996) (stating that the State need only present "marginal" or "slight" evidence at the preliminary hearing to establish

SUPREME COURT
OF
NEVADA

(O) 1947A

probable cause that a crime occurred and that the defendant is the person who committed the crime).

This court has previously noted that an abuse of discretion occurs whenever a court fails to give due consideration to the issues at hand. State v. Dist. Ct. (Armstrong), 127 Nev. ___, ___, 267 P.3d 777, 780 (2011) (citing to Jones Rigging and Heavy Hauling v. Parker, 66 S.W.3d 599, 602 (2002)); see also United States v. Miller, 722 F.2d 562, 565 (9th Cir. 1983) (holding that "as a general rule, the existence of discretion requires its exercise"). Here, the justice court failed to make an adequate inquiry and give due consideration to the prejudice to Patterson or the extent of the delay or inconvenience that the substitution of Ogata would have caused. This was an abuse of discretion.[5]

We must now determine whether the deprivation of Patterson's Sixth Amendment right to counsel of choice at the preliminary hearing was a structural error warranting reversal of Patterson's judgment of conviction, or trial error subject to harmless-error review.

---

[5]Patterson claims that his Sixth Amendment right to counsel was also violated at the district court level when the district court allowed Tannery to continue as Patterson's attorney even though Ogata had approached the prosecutors the morning of the trial and informed them that he was Patterson's attorney. We disagree. The district court was never asked to review what occurred at the justice court level, and Ogata never formally requested that he be substituted as counsel of record after the preliminary hearing.

<u>The denial of Patterson's Sixth Amendment right to retain his counsel of choice at his preliminary hearing was trial error and is thus reviewed for harmless error</u>

Patterson contends that the denial of his Sixth Amendment right to counsel of choice at the preliminary hearing is a structural error that requires reversal of his conviction. We disagree.

There are two classes of constitutional errors, "trial error[s]" and "structural defects." <u>Gonzalez-Lopez</u>, 548 U.S. at 148; <u>Arizona v. Fulminante</u>, 499 U.S. 279, 307-08, 309-10 (1991). "[T]rial error[s]" are subject to harmless-error review because these errors "may . . . be quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt." <u>Fulminante</u>, 499 U.S. at 307-08. Conversely, "structural defects" "affect[ ] the framework within which the trial proceeds, rather than simply an error in the trial process itself." <u>Id.</u> at 309-10. Such errors are grounds for reversal because they "defy analysis by 'harmless-error' standards." <u>Id.</u> at 309.

It has long been established that the complete denial of counsel at trial is a structural error under the Sixth Amendment. <u>Gideon v. Wainwright</u>, 372 U.S. 335, 344-45 (1963). Furthermore, the Supreme Court has held that the "deprivation of the right to counsel of choice . . . unquestionably qualifies as structural error" when it occurs at the trial court level because "the erroneous denial of counsel bears directly on the framework within which the trial proceeds." <u>Gonzalez-Lopez</u>, 548 U.S. at 150 (internal quotations omitted). Therefore, we recognize that had Patterson erroneously been denied his retained counsel of choice at trial, it would have been a structural error requiring reversal of the judgment of conviction.

However, as we have noted, not all "errors involving the right to counsel are reversible per se," and we have distinguished Gideon and its progeny from cases where the error did not result in total deprivation of counsel. Manley v. State, 115 Nev. 114, 123, 979 P.2d 703, 708-09 (1999) (applying harmless-error review to a claim that the defendant's Sixth Amendment right to counsel was violated by prosecutorial questions abridging the attorney-client privilege because the defendant was "represented by counsel at all times" and such an error "did not affect the framework within which the trial proceeded"). In addition, we have expressly held that "refusal by the magistrate to permit [a criminal defendant] to have counsel of his own choosing" at a preliminary hearing "falls into the category of harmless error" where the defendant was represented by counsel. State v. Rollings, 58 Nev. 58, 63, 68 P.2d 907, 909 (1937), overruled on other grounds by Sturrock v. State, 95 Nev. 938, 943, 604 P.2d 341, 345 (1979), receded from by Lisle v. State, 114 Nev. 221, 954 P.2d 744 (1998). In further support of our position, the Supreme Court has held that at the preliminary hearing stage, "[t]he test to be applied is whether the denial of counsel at the preliminary hearing was harmless error." Coleman v. Alabama, 399 U.S. 1, 11 (1970) (majority).[6] Accordingly, we reaffirm our prior jurisprudence and specifically hold that

---

[6]Other jurisdictions have similarly held that violations of a defendant's Sixth Amendment right to counsel of choice at the preliminary hearing stage are reviewed for harmless error. See Ditch v. Grace, 479 F.3d 249, 254 (3d Cir. 2007); U.S. v. Lott, 433 F.3d 718, 723 (10th Cir. 2006); State v. Brown, 903 A.2d 169, 178 (Conn. 2006).

violations of a defendant's Sixth Amendment right to counsel of choice at a preliminary hearing are reviewed for harmless error.

An error is harmless if this court can determine, beyond a reasonable doubt, that the error did not contribute to the defendant's conviction. Hernandez v. State, 124 Nev. 639, 653, 188 P.3d 1126, 1136 (2008). Patterson has not demonstrated how the justice court's denial of his counsel of choice at the preliminary hearing contributed to his conviction, particularly since Ogata was allowed to sit at counsel's table during the hearing and provide input to Tannery.

Furthermore, Patterson has not demonstrated how having Ogata as counsel at the preliminary hearing instead of Tannery would have produced a different result at trial when the State presented overwhelming evidence of Patterson's guilt. This evidence included proof that Wilkerson met with Patterson on the night of his death, the vehicle from the surveillance video belonged to Patterson's roommate, the gun used to kill Wilkerson was found concealed in Patterson's apartment, and Patterson frequently called Wilkerson before the shooting but all calls to Wilkerson's cell phone from Patterson's phone ceased after the shooting. In addition, FBI Agent Ayala testified that Patterson confessed to shooting Wilkerson. Based on this evidence, we can conclude, beyond a reasonable doubt, that the justice court's denial of Patterson's counsel of choice did not contribute to Patterson's conviction. Therefore, we hold that the justice court's denial of Patterson's right to counsel of choice was harmless error.

The State did not commit a Brady violation

Patterson contends that his rights under Brady v. Maryland, 373 U.S. 83 (1963), were violated because of the State's failure to provide

13

information that the FBI never records interviews, which could have been used to impeach Agent Ayala's testimony. "'Brady and its progeny require a prosecutor to disclose evidence favorable to the defense when that evidence is material either to guilt or to punishment.'" State v. Huebler, 128 Nev. ___, ___, 275 P.3d 91, 95 (2012) (quoting State v. Bennett, 119 Nev. 589, 599, 81 P.3d 1, 8 (2003)). A defendant's rights are violated under Brady where: "(1) the evidence is favorable to the accused, either because it is exculpatory or impeaching; (2) the State withheld the evidence, either intentionally or inadvertently; and (3) . . . the evidence was material." Id. (internal quotations omitted). Evidence is material if "there is a reasonable probability of a different result [at trial] if the defense had known" of the withheld evidence. Lay v. State, 116 Nev. 1185, 1196, 14 P.3d 1256, 1264 (2000).

Here, the purported impeachment evidence consisted of FBI memoranda stating that FBI agents are encouraged to seek permission to record interviews. However, encouragement to seek permission to record interviews necessarily implies that the FBI's default policy is not to record interviews. Thus, this evidence does not impeach Ayala's testimony that the FBI's policy is not to record interviews. Furthermore, we cannot conclude that there was a reasonable probability that the result would have been different had this evidence been disclosed. Therefore, we conclude that the State did not commit a Brady violation.

Having determined that none of Patterson's claims warrant reversal, we affirm the judgment of conviction.[7]

_____, J.
Hardesty

I concur:

_____, J.
Saitta

---

[7]Patterson contends that the cumulative errors during his trial warrant reversal of his conviction. We disagree. "'The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though errors are harmless individually.'" Valdez v. State, 124 Nev. 1172, 1195, 196 P.3d 465, 481 (2008) (quoting Hernandez v. State, 118 Nev. 513, 535, 50 P.3d 1100, 1115 (2002)). "When evaluating a claim of cumulative error, we consider the following factors: '(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged.'" Id. (quoting Mulder v. State, 116 Nev. 1, 17, 992 P.2d 845, 854-55 (2000)). Despite the serious nature of the crimes charged, the State presented compelling evidence of Patterson's guilt and we are not convinced that the cumulative effect of the two errors acknowledged in this opinion—the denial of retained counsel of his choice at the preliminary hearing and the admission of the rap lyrics (addressed supra note 4)—deprived Patterson of his constitutional right to a fair trial. As a result, we conclude that Patterson's cumulative error challenge is unavailing.

PARRAGUIRRE, J., concurring in part and dissenting in part:

I concur with most of the majority's determination, but I part company in their finding that the justice court abused its discretion in failing to adequately consider the delay or inconvenience the substitution of counsel would occasion.

Here, after Ogata sought to substitute as counsel and continue the preliminary hearing set that day, the justice court conducted a bench conference and thereafter stated several factors that directly implicated the inconvenience that a delay would cause. Particularly, the court noted that Tannery was qualified to handle the case and was prepared to proceed, and that both the State and codefendant's counsel were prepared to move forward. Additionally, the court recognized the presence of the State's out-of-state witness and implicit therein, the resulting inconvenience. Finally, the court noted that it did not believe that bifurcating the hearing was appropriate.

Under these circumstances, I do not find that the justice court abused its discretion.

_____, J.
Parraguirre