138 Nev., Advance Opinion 23

IN THE SUPREME COURT OF THE STATE OF NEVADA

DEQUINCY BRASS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 81142

**FILED**

APR 07 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT

BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of four counts of lewdness with a child under the age of 14; nine counts of sexual assault of a minor under 14; one count of child abuse, neglect, or endangerment; three counts of first-degree kidnapping of a minor; two counts of preventing or dissuading a witness or victim from reporting a crime or commencing prosecution; and one count of battery with the intent to commit sexual assault of a victim under 16. Eighth Judicial District Court, Clark County; Joseph Hardy, Jr., Judge.

*Reversed and remanded.*

Darin Imlay, Public Defender, and Deborah L. Westbrook, Chief Deputy Public Defender, Clark County,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Alexander G. Chen, Chief Deputy District Attorney, and John T. Afshar, Deputy District Attorney, Clark County,
for Respondent.

_____

BEFORE THE SUPREME COURT, CADISH, PICKERING, and HERNDON, JJ.

22-10815

## OPINION

By the Court, CADISH, J.:

Appellant retained Mitchell Posin as defense counsel in a 22-count criminal matter. After four continuances over two years at appellant's request, appellant moved to substitute counsel on the eve of the trial based on Posin's alleged failure to adequately prepare the defense. After two hearings, the district court denied appellant's motion even though a defense investigator testified to various shortcomings in Posin's preparation—shortcomings that Posin conceded at the hearings. A jury convicted appellant of most of the counts, and the district court sentenced him to an aggregate term of 115 years to life in prison. On appeal, appellant argues that the district court's decision denying his motion to substitute violated his Sixth Amendment right to counsel.

The Sixth Amendment right to counsel "encompasses two different rights, namely, the right to effective assistance of counsel and the right of a non-indigent defendant to be represented by the counsel of his or her choice." *Patterson v. State*, 129 Nev. 168, 175, 298 P.3d 433, 438 (2013). A decision denying a motion to substitute appointed counsel with different appointed counsel implicates the right to effective assistance of counsel, while a motion to substitute retained counsel with different counsel implicates a non-indigent defendant's Sixth Amendment right to counsel of his or her choice. Separate tests apply to determine whether a court should grant a motion to substitute depending on whether counsel is appointed or retained. Here, the district court applied the wrong test in deciding Brass's motion to substitute counsel because Posin was retained, not appointed. Under the appropriate test, as set forth in *Patterson* and clarified in this opinion, we conclude that the district court abused its discretion by denying

 

the motion to substitute counsel, as the record shows that Brass promptly sought relief after learning of his counsel's inadequate preparation and the serious concerns raised outweighed the disruption caused by another trial continuance. Because the error was structural, we reverse the judgment of conviction and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

In September 2017, the State charged appellant DeQuincy Brass with five counts of lewdness with a child under the age of 14; ten counts of sexual assault of a minor under the age of 14; one count of child abuse, neglect, or endangerment; three counts of first-degree kidnapping of a minor; two counts of preventing or dissuading a witness or victim from reporting a crime or commencing prosecution; and one count of battery with the intent to commit sexual assault of a victim under 16. The charges were based on allegations that between May 2015 and February 2017, while he was dating the mother of two children who were eight and three years old in 2015, Brass kidnapped and sexually assaulted and/or abused those children, as well as another child who was 13 years old at the time, and then used intimidation or threats to dissuade the children from reporting his crimes. The justice court concluded that Brass was indigent and appointed the Clark County Public Defender's office to represent him. However, Brass's family retained Mitchell Posin, and the court substituted Posin as Brass's counsel in January 2018 before Brass's preliminary hearing.

Brass pleaded not guilty and waived his right to a speedy trial on February 14, 2018. Shortly thereafter, Posin filed an ex-parte motion requesting that the district court appoint and pay an investigator to investigate Brass's case. On March 12, 2018, Posin filed a motion to withdraw as Brass's attorney, alleging that Brass's family had not paid his fee. Posin did not inform Brass of his motion to withdraw, and Posin did

not appear for the hearing on his motion. Posin later withdrew his motion because Brass's family agreed to pay him.

The district court set trial for April 30, 2018. Brass requested his first continuance at an April 3, 2018, status check hearing because his counsel needed more time to prepare. The district court granted the motion and rescheduled the trial for July 23, 2018. The district court then entered an order granting Brass's motion for an investigator on June 8, 2018. At a July 19, 2018, calendar call, Brass requested a second continuance, to which the State did not object. The district court granted the continuance and rescheduled the trial for November 13, 2018.

At a November 8, 2018, calendar call, the State announced that it was ready for trial. Brass, however, requested his third continuance, at which point Posin stated that he did not "feel that . . . I can provide, um adequate assistance of counsel understand [sic] the circumstances." Posin explained that the State "made some discovery ready and available some time back" but that he did not get that discovery "until recently" due to "financial reason[s] of my client's family."[1] The district court offered to reschedule the trial to July 8, 2019, but Posin requested an earlier trial date in May or June. The district court rescheduled trial for May 13, 2019.

At the May 7, 2019, calendar call, Posin stated that he had an issue with his investigator, who had, by that point, "sent out some [subpoenas]," and that Posin was trying to determine the status of those subpoenas. He asked the court to continue the calendar call until May 9, at

---

[1]Following this hearing, the State filed a receipt showing that it had produced the discovery on July 19, October 9, and October 19, 2018, but Posin did not pick it up until November 2, 2018—only 11 days before trial was set to begin.

which time he would give the court "an updated report" on his readiness for trial. The State pointed out that Posin had not noticed any witnesses, so it did not "know what subpoenas he's waiting for." The court continued the hearing, and when it resumed, Brass requested his fourth continuance. Posin explained that the initial investigator, who was employed by Investigator Robert Lawson to work on Brass's case, had "apparently quit" and had not responded to Posin's phone calls "over the last week or two." The State opposed the continuance, pointing out that it had issued subpoenas to the alleged minor victims and their parents four times, and the State was ready to proceed. The district court denied the motion, concluding that there was no good reason to grant a continuance and pointing out that the matter had been pending for over a year after having granted several continuances at Brass's request.

On May 13, 2019, the first day of trial, Brass renewed his motion for a continuance. Posin stated that Lawson was now personally handling the case but was not available to help at that point because he was working on a murder case. Posin claimed that he received new discovery from the State on the prior Friday, which included photographs of the motel where some of the alleged acts occurred, and that he needed time to investigate. The State argued that Brass was not prejudiced by the disclosure of photographs because the information regarding the motel was "available to him by reading the discovery." It further contended that "all that information has been available to [Posin] since the preliminary hearing . . . which was almost two years ago."

Brass personally expressed to the district court that he had not spoken with Posin since "December of last year." He stated, "I don't think [Posin is] prepared to represent me," and explained that Posin had not

discussed the case with him in any detail. Posin stated that he had spoken with Brass on the phone and saw him the previous Friday or Saturday, as well as at the preliminary hearing almost two years earlier. The court asked the State to comment on the "assistance of counsel" issue raised by Brass, to which the State answered that Posin was retained counsel who had been on the case since the preliminary hearing and there had been no showing that warranted another continuance. The State further pointed out that Brass had proffered nothing specific in terms of what he wanted Posin to do or what Posin had failed to do, and an investigator had been working on the case as well, who presumably had provided Posin with information. Posin replied that he had not prepared for the case or communicated with his client because the investigator who worked for Lawson, and whose employment had since been terminated, had not followed up on any assignments or responded to his calls. After asking why none of these concerns were raised until the day of trial, the court continued the hearing and instructed Posin to bring Lawson to the hearing later that day. Before recessing, the court stated that it disagreed with Posin's statement that another continuance would be only a minor inconvenience to the State, pointing out that roughly 90 people (potential jurors, witnesses) were waiting in the hallway, the prosecution was prepared, and the alleged victims were waiting to testify, having prepared for trial for the fourth time.

At the continued hearing, Lawson explained that he had fired the investigator he assigned to Brass's case because the investigator "didn't do any" investigative work, such as interview witnesses and contact experts. While he acknowledged that he did not follow up with his investigator, Lawson did not know why Posin never called him "in [the] three weeks that

[Posin] tried to get ahold of [the other investigator]." While the State objected to the continuance, pointing out that the victims, who were now 7, 11, and 15 years old, have had to "rehash this multiple times in preparation for trial," with every continuance being at the defense's request, the court continued the trial a fourth time over its concerns that proceeding to trial at that time would raise an ineffective-assistance-of-counsel issue. Thus, the court rescheduled the trial for February 24, 2020, which gave the defense roughly nine additional months to prepare for trial.

Nevertheless, at the August 2019 status check, the State pointed out that although the defense had raised issues about records and other items it was investigating and for which it needed the trial continuance, the defense still had not provided any of that information to the State. At the October 2019 status check, the court asked Lawson whether he had communicated with Brass and Posin, and Lawson stated he had spoken with Posin on several occasions but had yet to meet with Brass, and that Posin had provided direction on what to investigate. After Posin stated he would be ready for trial, the court asked Brass if there was any information he would like to communicate to Posin, privately, or anything he would like to tell the court on the record, explaining, "I want this to be a real trial date. I don't want a jury . . . literally in the hallway, witnesses all lined up," like last time, with "time and money spent to give you a good trial," if his defense was not ready. Brass stated that he understood. When asked if he communicated everything he needed to communicate to Posin, Brass said, "not completely, but I think that he is supposed to come and visit me." The court told Posin to make sure to get whatever information Brass had so that Lawson can complete the investigation, and Posin agreed.

At the December 2, 2019, status check, the State expressed concerns that Posin had not prepared because he had not provided any discoverable material. The State pointed out that seven months earlier, the court continued the matter at the start of trial after the defense represented that Brass wanted an investigation into his phone and for the defense to retain a phone expert. Posin explained that while he had not retained an expert, he "anticipate[d] on having one shortly." He further explained that he had consulted with Lawson and reviewed documents related to the case. The court asked if "shortly" meant by the end of the year, and Posin responded affirmatively. The court set a status check for two weeks later, observing that the history of the case and "vagueness and the lack of an expert in the last seven months" required it to follow up again.

At the December 17 status check, Posin reiterated that he was "working on" getting an expert and that he had "made inquiries" into various experts, but he had not yet retained one.[2] Posin further explained that he had prepared for the February trial by meeting with Brass and Lawson and reviewing the preliminary hearing transcripts. At the January 2020 status check, Posin stated that he no longer believed an expert was necessary and had been "working diligently" to be ready for trial. The State confirmed that it had provided all discovery to the defense, including data

---

[2]Posin stated that the defense wanted an expert "who can tell us what a particular program can or cannot do," because he understood that the State alleged that Brass "remotely deleted information from these cell phones." The State's attorney stated that she spoke to Lawson, who confirmed he was speaking to someone about the phones, but it was unclear why because the State was never in possession of Brass's phone, and although the victims believed that at certain times Brass remotely connected to their phones, the State had no evidence to proceed on that and there was no data for an expert to examine.

from the victims' phones. Posin denied receiving transcripts of certain recordings, and the State responded that it had a receipt showing the information was delivered to the defense. Lawson stated that the defense "might have" the transcripts and that he was going to follow up with the State's attorney, who had been "bending over backward for [the defense]" and very helpful in providing information. Posin told the court there was no need for another status check before trial, and the State's attorney said she was counting on Posin's statement that the defense would be ready.

At a February 20, 2020, calendar call, Posin explained that Brass told Posin that morning that he had mailed a motion to have the court appoint substitute counsel. Although the district court had not received a written motion from Brass, it conducted a sealed hearing pursuant to *Young v. State*, 120 Nev. 963, 102 P.3d 572 (2004), outside the State's presence. Brass stated that Posin "hasn't done anything in preparation for trial." He asserted that Posin had not subpoenaed any witnesses, visited with Brass, or discussed the trial strategy with Brass. According to Brass, his concerns were prompted by the fact that Lawson visited him one week earlier and stated that he had been unable to contact Posin to discuss the case or get subpoenas issued. Brass believed that Posin was "kind of trying to freestyle at trial with nothing prepared."

When the court asked when Posin last met with Brass, Posin said "about a month ago," to which Brass agreed, despite having just claimed that Posin had not visited him. Brass stated that the last time Posin visited, which lasted "all of about five minutes," Posin suitably answered a question Brass had, but they "did not discuss the case" or anything about the trial. When asked what he had done to prepare, Posin explained that he had met with the investigators several times and

"extensively" gone over all the documents. Posin stated he had a strategy but acknowledged that Brass "[did] not seem to feel that [strategy] was adequately explained to him." When asked why he had not raised these concerns before, Brass stated that, "as [Posin] does when he comes in for status checks, he leads me on to believe that he's working" on the case. While Brass could not identify whom he would call as witnesses beyond his brother as a character witness, he claimed that Lawson informed him of individuals who "needed to be subpoenaed" and could discuss the victims' characters, as well as testify as to job records purporting to show where Brass was at "certain dates and times." Posin explained that he did not intend to call witnesses and only planned to cross-examine the State's witnesses.[3] He did not believe the witnesses Brass wanted to testify should be called.

The court called the State back into the hearing, and the State objected to Brass's request for a continuance because it had three minor victims who had been ready to testify since May 2019, but who had to come back to court several times because of defense continuances, one of which was last minute, and the continued delays were stressful to the victims. It explained that it was prepared for trial and that its witnesses, all of whom were prepared to testify, included the law enforcement officers, the victims' mothers, and an out-of-state physician. The State argued that the motion, which no one had a written copy of, was untimely and suspect considering the continuance granted on what was supposed to be the first day of trial in

---

[3]The district court went off the record for the express purpose of allowing Posin to explain his strategy to Brass; however, Posin did not do so because he had previously told Brass what his strategy was generally, and he did not see how explaining his exact strategy would be "a useful exercise just now."

May 2019, and that because this case began in 2017, the length of time created a risk that the victims' memories would fade. The State also argued that Brass failed to demonstrate why the court should appoint someone new, especially since Brass had retained Posin as his attorney since the preliminary hearing over two years earlier.

The district court denied the motion. The court concluded the motion was untimely because Brass first raised his concerns right before trial was set to start when he could have raised them at one of the prior status checks. It concluded that "it appeared [Brass] did not want to proceed to trial" and noted that the only witness Brass identified was his brother, who would testify without being subpoenaed. It also concluded that another continuance would be "highly prejudicial" to the State, alleged victims, witnesses, and "the potential for justice through the trial process," as the case was extremely old for a criminal matter and memories fade. The court stated that the fact that the public defender originally represented Brass and that Brass chose Posin "weighed against" granting the motion.

On the first day of trial, before voir dire began, the court held a second sealed *Young* hearing to consider Brass's renewed oral motion to substitute counsel. At the hearing, Posin acknowledged he was "concerned that there may be an issue of whether I'm providing adequate representation of counsel based on whether perhaps I have dropped the ball." Specifically, Posin was "increasingly concerned that some of the subpoenas that [he] perhaps could have and should have sent out may affect [his] ability to provide that adequate representation of counsel." Because of his concerns about the adequacy of his investigation after speaking to Lawson, Posin had asked Lawson to appear and speak to the court.

Lawson expressed deep and serious concerns about the failure of Posin to follow up on investigative leads and prepare for trial. As an experienced investigator in connection with numerous criminal trials, Lawson stated that during the investigation, "it became apparent to me that Mr. Posin had literally no knowledge of this case." Lawson noted that he and Posin had "never done a file review on this case." He informed Posin that the investigators "developed exculpatory evidence" that "Mr. Brass likel[y] didn't commit this crime," but Posin did not subpoena this evidence. Specifically, he explained that (1) one of the victim's accounts had not remained consistent; (2) a coworker could provide timesheets showing when Brass and "the alleged victim's mother worked together and they could provide us a printout of the times that they were working, where they were working, and if they're on the computer at the same time"; (3) a hotel employee could confirm that an alleged incident did not occur at "the Palm Hotel"; (4) "we don't even know if" one of the victims, who Lawson claimed had a reputation for lying in general, was in Las Vegas at the time of one of the alleged incidents; (5) the older victim would often dominate one of the younger victims; and (6) one of the victims had a "substantial CPS history" that should have been subpoenaed and reviewed in camera. Lawson also stated that Posin had not talked to Brass about whether Brass would testify and that "on several occasions" Brass expressed to Lawson and the other investigator "his dissatisfaction with Mr. Posin." Lawson stated that he "cannot let this [c]ourt believe for one minute that Mr. Brass is getting any kind of a defense, let alone a bad defense."[4]

---

[4]The court pointed out that Lawson had been present for numerous status checks and assured the court that things were on track for trial and that the issues Lawson now raised were issues that had been dealt with a

Supreme Court
OF
Nevada

(O) 1947A

Posin confirmed that he had not issued any subpoenas, and while he disagreed with Lawson's characterization that he had done nothing to prepare, as he had reviewed the evidence provided by the State, including transcripts and recordings, discussed defense strategy with Lawson, and prepared opening statements and cross-examinations, Posin conceded that it was insufficient preparation.[5]  He confirmed he did not follow up with Brass's employer or the hotel employee.  He stated that he last met with Brass yesterday, and before that, about a month earlier.  Brass agreed that Posin met with him on those occasions but claimed it was only for about 15 or 20 minutes the first time and an hour the second time.  Posin acknowledged that while he initially focused on defending this case through cross-examination of the State's witnesses as opposed to presenting his own evidence, he became "more and more convinced" after talking to Lawson over the past few days "that this is the type of case that some of our . . . own evidence in the defense case would have been appropriate.  Not only appropriate but perhaps necessary."

The court took a recess, after which the State was permitted back in the courtroom.  Not knowing what happened during the sealed hearing, the State opposed the motion.  It pointed out that during the multiple status checks since the fourth continuance, at which Lawson and

_____

year ago.  Lawson, after apologizing to the court, explained that he "cannot write a motion on behalf" of Brass or "contact the [c]ourt ex parte on behalf" of Brass.

[5]While Posin initially stated that he felt he did not sufficiently prepare for trial in light of his conversations with Lawson, he affirmed that he could provide competent representation at trial after the district court asked if it should refer Posin to the State Bar for potential discipline related to his conduct in this case.

Brass were present, no one ever raised the diligence and competence issues they now claimed warranted a last-minute substitution of an attorney who had been on the case for over two years, and instead, they had assured the court that the defense would be ready for the rescheduled trial. The court denied Brass's motion. It concluded the motion was untimely,[6] as Brass failed to raise these concerns at multiple status checks when he had the opportunity to do so, and the prejudice to the State and its witnesses was high. The court also concluded that Posin, Brass, and Lawson had multiple meetings and communications and the issue between Brass and Posin "boils down to potential strategy differences," which the court concluded did not warrant granting the motion. Brass went to trial, the jury convicted him of 20 of the 22 counts, and the district court sentenced Brass to an aggregate term of 115 years to life. Brass appeals.

## DISCUSSION

Brass argues that his motion to substitute counsel was timely and that the district court's denial of his motion violated his Sixth Amendment rights.[7] Reviewing the district court decision for an abuse of discretion, *Patterson*, 129 Nev. at 175, 298 P.3d at 438, we agree.

---

[6]The court observed that Brass's written motion, which he apparently mailed on February 19 (one day before the calendar call), was not received and filed until after calendar call.

[7]While the parties in their briefs focus their attention on whether the district court's order violates the standards announced in *Young v. State*, 120 Nev. 963, 102 P.3d 572 (2004), the motion in this case qualifies as one seeking to substitute retained counsel, so the right to counsel of choice discussed in *Patterson v. State*, 129 Nev. 168, 298 P.3d 433 (2013), applies. Since we have the authority to "address . . . constitutional error *sua sponte*," *Sterling v. State*, 108 Nev. 391, 394, 834 P.2d 400, 402 (1992), we directed the parties to discuss *Patterson*'s application to this case at oral argument.

A district court abuses its discretion when it "fails to give due consideration to the issues at hand." *Id.* at 176, 298 P.3d at 439. "The Sixth Amendment right to counsel encompasses two different rights, namely, the right to effective assistance of counsel and the right of a non-indigent defendant to be represented by the counsel of his or her choice." *Id.* at 175, 298 P.3d at 438 (citing *United States v. Rivera-Corona*, 618 F.3d 976, 979 (9th Cir. 2010)). When a defendant "seeks to replace court-appointed counsel with privately retained counsel, or previously retained counsel with newly retained counsel, or *privately retained counsel with court-appointed counsel*[,] . . . the focus is on the right to counsel of one's choice."[8] *Id.* (emphasis added). In general, a defendant can replace his retained lawyer "for any reason or no reason" at all. *Rivera-Corona*, 618 F.3d at 979-80. However, the right to counsel of choice is not absolute, and a district court has "wide latitude in balancing the right to counsel of choice against the

---

Because the district court's findings of fact and conclusions of law effectively addressed the *Patterson* factors, and the parties had the opportunity to argue the *Patterson* factors at oral argument, we apply the *Patterson* analysis here.

[8]We note that *Patterson*'s conclusion that the right to counsel of choice is implicated when a defendant attempts to discharge retained counsel and seeks appointed counsel due to the defendant's indigent status is consistent with most other courts' interpretation of the scope of the Sixth Amendment right to counsel of choice. *See, e.g., United States v. Brown*, 785 F.3d 1337, 1344 (9th Cir. 2015) (holding that "a defendant's request to substitute appointed counsel in place of a retained attorney 'implicate[s] the qualified right to choice of counsel'" (alteration in original) (quoting *Rivera-Corona*, 618 F.3d at 981)). Thus, while we often refer to "the right of a *non-indigent* defendant to be represented by the counsel of his or her choice," *Patterson*, 129 Nev. at 175, 298 P.3d at 438 (emphasis added), the right is also implicated if an indigent defendant attempts to replace *retained* counsel with appointed counsel.

needs of fairness . . . and against the demands of its calendar." *Patterson*, 129 Nev. at 175, 298 P.3d at 438 (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006)).

Thus, a defendant may substitute his retained counsel at any time, unless the motion to substitute is "untimely and would result in a 'disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.'"[9] *Id.* at 176, 298 P.3d at 438 (quoting *People v. Lara*, 103 Cal. Rptr. 2d 201, 211-12 (Ct. App. 2001)); *see also People v. Maciel*, 304 P.3d 983, 1010 (Cal. 2013) (explaining that a court must "consider[ ] the totality of the circumstances" when deciding whether a motion to discharge retained counsel is timely). Because "the defendant's right to . . . counsel need not always yield to judicial efficiency," *Lara*, 103 Cal. Rptr. 2d at 212, the evaluating court must "balance the defendant's interest in new counsel against the disruption, if any, flowing from the substitution," *Patterson*, 129 Nev. at 176, 298 P.3d at 438 (quoting *Lara*, 103 Cal. Rptr. 2d at 212).

--------

[9]We recognize that, in *Patterson*, we instructed the evaluating court to also consider whether denying the motion to substitute would significantly prejudice the defendant. 129 Nev. at 176, 298 P.3d at 438. However, *Patterson* misstated the test from *Lara*, and we take this opportunity to clarify that the proper test when evaluating a motion to substitute retained counsel is whether (1) *granting* the motion "would cause 'significant prejudice' to the defendant, e.g., by forcing him to trial without adequate representation," or (2) the motion "was untimely and would result in a 'disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.'" *Lara*, 103 Cal. Rptr. 2d at 211-12 (quoting *People v Ortiz*, 800 P.2d 547, 552 (Cal. 1990)). No party here argues that granting Brass's motion to substitute counsel would cause him significant prejudice; thus we only address whether the motion is untimely and would result in an unreasonable disruption of the orderly processes of justice.

We emphasize that the *Patterson* analysis is distinct from the *Young* analysis, which is used when a defendant seeks to replace appointed counsel with different appointed counsel. *Patterson*, 129 Nev. at 175, 298 P.3d at 438 (noting that the *Young* inquiry "is used to evaluate an attempt to substitute one appointed attorney for another"). *Patterson* focuses on the defendant's right to retained counsel of choice and the court's countervailing interests in the timely and orderly administration of justice, while *Young's* three-part inquiry focuses on "(1) the extent of the conflict [between client and counsel]; (2) the adequacy of the [district court's] inquiry [into the conflict]; and (3) the timeliness of the motion." 120 Nev. at 968, 102 P.3d at 576 (quoting *United States v. Moore*, 159 F.3d 1154, 1158-59 (9th Cir. 1998)). The focus is distinct because the *Young* inquiry "is designed to determine whether [an] attorney-client conflict is such that it impedes the adequate representation that the Sixth Amendment guarantees to all defendants, including those who cannot afford to hire their own attorneys," *Patterson*, 129 Nev. at 175, 298 P.3d at 438 (quoting *Rivera-Corona*, 618 F.3d at 979), while *Patterson* "balanc[es] the right to counsel of choice against the needs of fairness . . . and against the demands of [the district court's] calendar," *id.* (quoting *Gonzalez-Lopez*, 548 U.S. at 152). Thus, under the *Patterson* test, a defendant need not show inadequate representation or an irreconcilable conflict to have his motion granted. *See People v. Ortiz*, 800 P.2d 547, 553 (Cal. 1990) ("While we do require an *indigent* criminal defendant who is seeking to substitute one *appointed* attorney for another to demonstrate either that the first appointed attorney provided inadequate representation, or that he and the attorney are embroiled in irreconcilable conflict, we have never required a *nonindigent* criminal defendant to make such a showing in order to discharge his

SUPREME COURT
OF
NEVADA

(O) 1947A

17

*retained* counsel." (citations omitted)); *cf. United States v. Brown*, 785 F.3d 1337, 1348 (9th Cir. 2015) (explaining that the defendant's reasons "for wanting to discharge his retained lawyer were not properly the court's concern" because the defendant had the right to discharge his counsel "for any reason or [for] no reason" (alteration in original) (emphasis and internal quotation marks omitted)).

The district court here erroneously relied on the factors in *Young*, 120 Nev. at 968-69, 102 P.3d at 576, rather than *Patterson,* when it denied Brass's motion. The district court's misplaced reliance on *Young* does not require reversal, however, if its decision effectively addressed the issues the district court should have considered under *Patterson. See Lara*, 103 Cal. Rptr. 2d at 214. Because the district court's findings of fact and conclusions of law did so here, we address whether the district court's decision to deny the motion was an abuse of discretion under *Patterson.*

To reiterate, in this case the relevant inquiry under *Patterson* is whether the motion to substitute retained counsel is untimely and the resulting disruption of the orderly processes of justice outweighs the defendant's right to counsel of choice. *Patterson*, 129 Nev. at 176, 298 P.3d at 438. In deciding whether a motion to discharge retained counsel is timely, the court must "consider[ ] the totality of the circumstances." *Maciel*, 304 P.3d at 1010; *see also Patterson*, 129 Nev. at 176, 298 P.3d at 438 (analyzing whether the motion to substitute retained counsel was timely "under the circumstances of the particular case" (internal quotation marks omitted)). Brass first moved to substitute retained counsel at the calendar call four days before the February 24, 2020, trial date, just seven days after Lawson visited Brass in jail and informed him that Posin had not prepared for trial. The district court deemed the motion untimely, finding

that both Brass and Lawson could have raised their concerns with Posin's preparation at one of the numerous pretrial hearings in this case, but we cannot agree. The record shows that at each status check, Posin represented that he was diligently preparing for trial and that he would not need another continuance. Brass was entitled to rely on Posin's in-court representations that he was preparing for trial. *Cf. Oak Grove Inv'rs v. Bell & Gossett Co.*, 99 Nev. 616, 622, 668 P.2d 1075, 1078-79 (1983) ("The rationale for the [discovery rule in legal malpractice cases] is that a client has the right to rely on the attorney's expertise . . . ."), *overruled on other grounds by Calloway v. City of Reno*, 116 Nev. 250, 264, 993 P.2d 1259, 1268 (2000). Brass thus raised his concerns about Posin's competence and preparation at the first opportunity after discovering those circumstances.[10] *See Lara*, 103 Cal. Rptr. 2d at 219 (concluding the defendant's motion to substitute retained counsel filed on the first day of trial was timely where the defendant "was unaware of the nature of [his attorney's] preparation until the moment the trial was finally set to begin"); *cf. Daniels v. Woodford*, 428 F.3d 1181, 1200 (9th Cir. 2005) ("Even if the trial court becomes aware of a conflict on the eve of trial, a motion to substitute counsel is timely if the conflict is serious enough to justify the delay.").

---

[10]While Lawson stated that Brass expressed dissatisfaction with Posin "on several occasions," nothing in the record indicates that Brass knew Posin was not adequately preparing for trial prior to Lawson's February visit to Brass. Similarly, the fact that Lawson did not raise his concerns with Posin's behavior at an earlier status check does not weigh against the timeliness of Brass's motion because we cannot impute Lawson's knowledge to Brass when the record does not show that Lawson had informed Brass of his concerns with Posin's preparation prior to any of the earlier status checks.

Moreover, although a defendant generally can discharge retained counsel for any reason or no reason at all and therefore does not have to demonstrate inadequate representation or an irreconcilable conflict, the court can consider the absence or presence of such circumstances, and when defendant became aware of them, in deciding whether the motion to discharge retained counsel is untimely. *See Maciel*, 304 P.3d at 1010-11 (observing that the trial court "did nothing improper" when it discussed the concerns the defendant raised about retained counsel during a hearing on the defendant's motion to discharge retained counsel). At the hearing on Brass's renewed motion, Posin acknowledged that "there may be an issue of whether I'm providing adequate representation of counsel based on whether perhaps I have dropped the ball." He conceded that "this is the type of case that some of . . . our own evidence in the defense case would have been appropriate," "[or] perhaps necessary." Despite acknowledging that it was "necessary" to prepare and produce exculpatory evidence in this case and noting that Lawson provided several detailed leads on potentially exculpatory evidence, Posin conceded that he did not "issue a single subpoena" to follow up on that evidence. Further, Lawson—an experienced investigator appointed by the district court—told the court that "it became apparent to me that Mr. Posin had literally no knowledge of this case." After explaining both that "[he and Posin have] never done a file review on [Brass's] case" and the potentially exculpatory evidence he and his investigators discovered, Lawson declared that he "cannot let this [c]ourt believe for one minute that Mr. Brass is getting any kind of a defense, let alone a bad defense." The district court correctly noted the inadequacy of Posin's preparations when it discussed referring him to the State Bar for potential discipline, assuming the truth of "a substantial portion" of

SUPREME COURT
OF
NEVADA

(O) 1947A

Lawson's testimony.[11] The record thus shows ample evidence that Posin did not adequately prepare for trial in this case.[12] Few derelictions by counsel are more significant than inadequate preparation for trial. *Cf. Moore v. United States*, 432 F.2d 730, 735 (3d Cir. 1970) ("Adequate preparation for trial often may be a more important element in the effective assistance of counsel to which a defendant is entitled than the forensic skill exhibited in the courtroom. The careful investigation of a case and the thoughtful analysis of the information it yields may disclose evidence of which even the defendant is unaware and may suggest issues and tactics at trial which would otherwise not emerge."). In other words, this is not a situation where a defendant arbitrarily sought to discharge retained

---

[11]While a potential conflict between Brass and Posin, who undertook Brass's case during a stayed 18-month bar suspension, *In re Discipline of Posin*, No. 69417, 2016 WL 1213354, at *1 (Nev. Mar. 25, 2016), is not a required consideration under *Patterson*, Posin's desire to avoid any potential bar discipline ties into the timeliness inquiry, as Posin initially expressed concern that he did not adequately prepare for trial yet immediately stated he could go to trial once the district court indicated it was considering referring him to the State Bar for potential discipline. Thus, Posin apparently gave false assurances when convenient for his own purposes at the status hearings and even at the hearing on Brass's renewed motion held on the day trial was set to begin.

[12]Although the district court found that Brass's complaints amounted to a disagreement with Posin's trial strategy, this finding is not supported by the record. Brass contended that Posin was not adequately prepared to represent him at trial because he did not adequately investigate the case, and Posin conceded that further review of the record convinced him that he should have issued subpoenas to follow up on the potentially exculpatory evidence Lawson identified. Thus, at the renewed motion hearing, there was no disagreement in strategy, as Posin conceded that his prior trial strategy to rely on cross-examination of the State's witnesses was inadequate.

SUPREME COURT
OF
NEVADA

(O) 1947A

21

counsel on the first day of trial. *Cf. People v. Keshishian*, 75 Cal. Rptr. 3d 539, 542 (Ct. App. 2008) (concluding that the trial court did not abuse its discretion in denying a defendant's motion to discharge retained counsel where the case had been pending for 2½ years; the defendant made a "last-minute" request on the day set for trial based solely on having "inexplicably 'lost confidence' in his experienced and fully prepared counsel"; and granting the request would have required an "indefinite continuance").

We recognize that granting the motion would have disrupted the orderly processes of justice. In particular, it would have necessitated another continuance in the trial of a case that had been pending for more than two years and inconvenienced the State, victims, witnesses, and potential jurors. But that disruption was not unreasonable considering the totality of the circumstances: Brass promptly moved to discharge retained counsel after learning that counsel had not adequately prepared for trial; he faced going to trial with admittedly unprepared counsel in a 22-count felony case; and he was indigent and requested appointed counsel to replace Posin, not an indefinite delay to find new retained counsel.

Accordingly, while the district court understandably and appropriately had concerns about the prejudice to the State, as well as to the victims, witnesses, and potential jurors from the multiple defense-instigated trial continuances, it abused its discretion here because the motion was timely under the circumstances and any disruption to the orderly process of justice was reasonable under the unique facts of this case.[13] As this error is structural, *Gonzalez-Lopez*, 548 U.S. at 150;

---

[13]The district court also erred in concluding that the fact Brass retained Posin weighed against granting Brass's motion to substitute counsel. *See Rivera-Corona*, 618 F.3d at 979-80 ("Unless the substitution

*Patterson*, 129 Nev. at 177-78, 298 P.3d at 439, we reverse the judgment of conviction and remand for a new trial.[14]

Further, Posin's conduct in this case may violate the Rules of Professional Conduct. Consequently, we refer Posin to the State Bar of Nevada for such disciplinary investigations or proceedings as are deemed warranted. *See* SCR 104(1)(a). Accordingly, we direct the clerk of this court to provide a copy of this opinion to the State Bar of Nevada.[15] Bar counsel shall, within 90 days of the date of this opinion, inform this court of the status or results of the investigation and any disciplinary proceedings in this matter.

---

would cause significant delay or inefficiency or run afoul of the other considerations we have mentioned, a defendant can fire his retained or appointed lawyer and retain a new attorney for any reason or no reason." (emphasis omitted)). Indeed, the fact that Brass retained Posin gave him a greater ability to substitute counsel in recognition of his right to counsel of his choice. *See Patterson*, 129 Nev. at 175-76, 298 P.3d at 438. It is issues with Posin's representation, not Brass's manipulation, that results in the need to conduct a new trial here, and Posin's retention and payment as private counsel may not be held against Brass.

[14]In light of our disposition, we need not consider and express no opinion on Brass's remaining arguments, including his challenges to the sufficiency of the evidence. *See Buchanan v. State*, 130 Nev. 829, 833, 335 P.3d 207, 210 (2014) ("Because we reverse the district court's decision on the independent grounds of structural error, we decline to consider Buchanan's challenge to the sufficiency of the evidence supporting his convictions.").

[15]While our decision is based solely on the pretrial motion to substitute counsel, the State Bar's review of Posin's conduct may take into consideration Posin's actions at trial—many of which are raised in the appellate briefing herein—as well.

## CONCLUSION

The Sixth Amendment right to counsel includes the right of a non-indigent defendant to the retained counsel of his or her choice. When a defendant moves to substitute retained counsel, the evaluating court analyzes whether the motion is timely and whether the defendant's right to counsel of choice outweighs countervailing interests in the efficient and orderly administration of justice. Here, the motion was timely under the circumstances, given retained counsel's assurances at the status checks about his trial preparation compared to his last-minute concession that he was not prepared, given that his choices not to subpoena records or witnesses were not strategy-based, and given that Brass did not become aware of these deficiencies until a week before calendar call. Brass's right to counsel of choice outweighs the disruption and inconvenience of a further trial continuance, as the record shows retained counsel took no steps to follow up on potentially exculpatory evidence his investigator identified and Brass raised these issues at the first opportunity after learning about them. Because the erroneous denial of a motion to substitute counsel at the trial level is structural error, we reverse the judgment of conviction and remand for a new trial.

_____, J.
Cadish

We concur:

_____, J.
Pickering

_____, J.
Herndon

SUPREME COURT
OF
NEVADA

(O) 1947A